2011 UT 30

**STATE of Utah, Plaintiff and Appellee,**

v.

**Chance L. ROBINSON, Defendant and Appellant.**

No. 20090015.

Supreme Court of Utah.

June 10, 2011.

Mark L. Shurtleff, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Matthew R. Howell, Provo, for defendant

On Certification from the Utah
Court of Appeals

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 Chance Robinson was charged with unlawful possession or use of a controlled substance based on the presence of methamphetamine in his bloodstream. The charge was grounded on provisions of the Utah Controlled Substances Act that make it unlawful for any person to "knowingly and intentionally" have "any measurable amount of a controlled substance in [his or her] body." [1] We are asked to determine whether this "measurable amount" provision violates the Utah or the United States Constitution. We hold

---

1. *See* UTAH CODE ANN. §§ 58–37–8(2)(a)(i), 58–37–2(1)(ii), 58–37–2(1)(c) (Supp.2010). Because there have been no substantive changes to the relevant statutes that would affect this opinion, we cite to the current versions.

that it does not and affirm the decision of the district court.

## BACKGROUND

¶ 2 On August 10, 2007, Mr. Robinson was stopped by Lehi City police officers on suspicion of driving without insurance. Because Mr. Robinson had difficulty speaking and his eyes were bloodshot and glassy, one of the officers administered multiple sobriety tests. After Mr. Robinson failed the sobriety tests, he was arrested for driving under the influence.

¶ 3 At the police station, Mr. Robinson admitted using heroin twelve hours earlier. He also submitted to breath, urine, and blood tests. The urinalysis tested positive for cocaine and benzodiazepine. The blood analysis tested positive for methamphetamine.

¶ 4 Mr. Robinson was charged initially with various offenses not at issue in this appeal.[2] The State subsequently added a charge of possession or use of methamphetamine after Mr. Robinson's blood tested positive for methamphetamine. The charge was based on a provision of the Utah Controlled Substances Act that makes it unlawful for any person to "knowingly and intentionally"[3] have "any measurable amount of a controlled substance in [his or her] body."[4]

¶ 5 At the preliminary hearing on the methamphetamine charge, Mr. Robinson argued that the "measurable amount" provision was an unconstitutional "status offense" under *Robinson v. California*.[5] The district court found probable cause to bind over as to the methamphetamine charge, but allowed Mr. Robinson to file a motion to quash the bindover based on his constitutional arguments. After both parties briefed and argued the constitutional issues,[6] the district court held that the measurable amount provision was not unconstitutional under *Robinson* and denied Mr. Robinson's motion to quash the bindover order for the methamphetamine charge.

¶ 6 Mr. Robinson subsequently entered a conditional guilty plea to possession or use of methamphetamine and driving with a measurable amount of a controlled substance in his body. As part of the plea agreement, Mr. Robinson reserved the right to appeal the district court's denial of his motion to quash the bindover order for the methamphetamine charge,[7] which he now exercises. On appeal, Mr. Robinson contends that Utah's measurable amount provision violates the Utah and United States Constitutions. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(b) (Supp.2010).

## STANDARD OF REVIEW

¶ 7 "Constitutional challenges to statutes present questions of law, which we re-

---

2. The initial charges were: driving on a suspended or revoked license, operation of a vehicle without insurance, possession of drug paraphernalia in a drug-free zone, possession or use of heroin, and driving under the influence. The license and insurance charges were dismissed for lack of evidence at a preliminary hearing. But Mr. Robinson was bound over on the heroin, paraphernalia, and driving under the influence charges.

3. Utah Code Ann. § 58–37–8(2)(a)(i) ("It is unlawful ... for any person knowingly and intentionally to possess or use ... a controlled substance.").

4. *Id.* § 58–37–2(1)(ii) (defining " 'possession' or 'use' " as "consumption"); *id.* § 58–37–2(1)(c) (defining " 'consumption' " as "having any measurable amount of a controlled substance in a person's body").

5. 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

6. In addition to his claims under *Robinson*, Mr. Robinson's brief included arguments that the measurable amount provision violated the due process and the uniform operation of laws clause of the Utah Constitution.

7. *See State v. Sery*, 758 P.2d 935, 939 (Utah Ct.App.1988) ("We hold that conditional pleas ..., when agreed to by the defendant and the prosecution and approved by the [district] court, are permissible in Utah even though they are not specifically authorized by the statutes governing the entry of pleas by criminal defendants."), *adopted in* Utah R.Crim. P. 11(j) ("With approval of the court and the consent of the prosecution, a defendant may enter a conditional plea of guilty ... reserving in the record the right, on appeal from the judgment, to a review of the adverse determination of any specified pre-trial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.").

view for correctness." [8]

## ANALYSIS

■ ¶ 8 The Utah Controlled Substances Act makes it unlawful "for any person knowingly and intentionally to possess or use a controlled substance" in Utah without a valid prescription.[9] " 'Possession' or 'use' " includes "the application, inhalation, swallowing, injection, or consumption" of a controlled substance.[10] "Consumption" is defined, in turn, as "ingesting or having any measurable amount of a controlled substance in a person's body." [11] When read together, the "measurable amount" provision of the Act makes it unlawful for any person to "knowingly and intentionally" have "any measurable amount of a controlled substance in [his or her] body." [12]

¶ 9 Mr. Robinson contends that the measurable amount provision violates the due process and the uniform operation of laws clause of the Utah Constitution. Next, he argues that the measurable amount provision violates the constitutional principles set forth under the United States Supreme Court's decision in *Robinson v. California*.[13] For the reasons that follow, we hold that the measurable amount provision does not violate the Utah or the United States Constitution.[14]

## I. THE MEASURABLE AMOUNT PROVISION OF THE UTAH CONTROLLED SUBSTANCES ACT DOES NOT VIOLATE THE DUE PROCESS OR THE UNIFORM OPERATION OF LAWS CLAUSE OF THE UTAH CONSTITUTION

¶ 10 Mr. Robinson contends that Utah's measurable amount provision violates the due process and the uniform operation of laws clause of the Utah Constitution. We disagree and address each argument in turn.

### A. The Measurable Amount Provision Does Not Violate the Due Process Clause of the Utah Constitution

¶ 11 Article I, section 7 of the Utah Constitution states, "No person shall be deprived of life, liberty or property, without due process of law." [15] Mr. Robinson contends that the measurable amount provision violates the due process clause because it exposes a person to criminal liability for unintentional or involuntary conduct. This argument relies on Mr. Robinson's erroneous belief that a defendant can be convicted under the measurable amount provision based *solely* on the presence of a controlled substance in his body. For instance, Mr. Robinson argues that a defendant can be convicted even if a third party injects a controlled substance into the defendant's body while he is asleep or over his objection. Likewise, Mr. Robinson argues that a defendant would be subject to prosecution after unintentionally inhaling secondhand marijuana smoke from another person.

¶ 12 None of Mr. Robinson's hypothetical applications of the measurable amount provision are plausible. The measurable amount provision makes it unlawful for any person to *"knowingly and intentionally"* have "any measurable amount of a controlled substance in [his or her] body." [16] A person cannot "knowingly and intentionally" have a controlled substance in his body unless he first introduces the substance into his body voluntarily. Thus, the State cannot convict a defendant under the measurable amount provision by simply presenting evidence that the illegal substance was present in the defen-

8. *State v. Gallegos*, 2009 UT 42, ¶ 10, 220 P.3d 136.

9. Utah Code Ann § 58–37–8(2)(a)(i) (Supp.2010).

10. *Id.* § 58–37–2(1)(ii).

11. *Id.* § 58–37–2(1)(c).

12. *Id.* §§ 58–37–8(2)(a)(i), 58–37–2(1)(ii), 58–37–2(1)(c).

13. 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

14. The order in which we address Mr. Robinson's claims is not meant to indicate that we are adopting either the primacy or interstitial model of constitutional analysis.

15. Utah Const. art. I, § 7.

16. Utah Code Ann. §§ 58–37–8(2)(a)(i) (emphasis added), 58–37–2(1)(ii), 58–37–2(1)(c).

dant's body; it must also prove that the defendant "knowingly and intentionally" introduced the substance into his body.

¶ 13 Next, Mr. Robinson argues that his conviction violates his due process rights because the State did not present any evidence that he "actually ingested the methamphetamine into his body in a voluntary or knowing manner." Mr. Robinson misapprehends the nature of his conviction. Mr. Robinson pled *guilty* to "knowingly and intentionally" possessing or using methamphetamine and admitted that methamphetamine was present in his blood at the time of arrest. By pleading guilty, he relieved the State of its burden to prove the elements of the crime charged.[17] As we previously explained, one of those elements is that the defendant "knowingly and intentionally" introduced the illegal substance into his body. Thus, contrary to his assertions, Mr. Robinson pled guilty to having "ingested methamphetamine into his body in a voluntary [and] knowing manner," and the State was thereby relieved from presenting any evidence to that effect.

¶ 14 Finally, Mr. Robinson argues that his conviction under the measurable amount provision violates his due process rights because, even if he knowingly and intentionally ingested methamphetamine, "there [was] nothing [he] could do to conform his actions to the requirements of [the measurable amount provision]" but "wait until his body's natural metabolic processes cleansed his system." Mr. Robinson claims that this situation is particularly egregious because the ingestion

could have occurred in a jurisdiction where methamphetamine is subject to lesser penalties.

¶ 15 Mr. Robinson's only attempt to anchor this argument to any legal authority is his assertion that "if due process [under the Utah Constitution] is to mean anything beyond notice and a hearing, it has to mean that a person cannot be prosecuted and convicted for something beyond his ability to control." And his only support for this assertion is a bald citation to *Swayne v. L.D.S. Social Services*[18] and *Ellis v. Social Services Department of the Church of Jesus Christ of Latter-Day Saints.*[19] But these cases simply hold that due process requires that a person be given "a reasonable opportunity to comply with the statute." [20] We conclude that the measurable amount provision meets this standard.

¶ 16 To start, the measurable amount provision provides clear notice that it is unlawful for any person to have a controlled substance in his body while he is in Utah so long as he "knowingly and intentionally" introduced the substance into his body.[21] Accordingly, Mr. Robinson could have complied with the measurable amount provision by refusing to introduce methamphetamine into his body in the first place. And even if Mr. Robinson introduced the methamphetamine into his body in another jurisdiction, he could have complied with the measurable amount provision by choosing to remain outside Utah's borders until the methamphetamine[22] was no longer

---

17. *See* UTAH R.CRIM. P. 11(e)(4)(A) (stating that a district court may not accept a guilty plea unless "the defendant understands ... that upon trial the prosecution would have the burden of proving each ... element[] beyond a reasonable doubt, and that *the plea is an admission of all those elements.*" (emphasis added)). It is unclear whether Mr. Robinson also attempts to argue that the State did not present sufficient evidence at his preliminary hearing to support the district court's decision to bind over for the charge of possession or use of methamphetamine. Regardless, by not moving to withdraw his guilty plea, Mr. Robinson has lost his ability to bring a sufficiency of the evidence claim.

18. 795 P.2d 637 (Utah 1990).

19. 615 P.2d 1250 (Utah 1980).

20. *Id.* at 1256 ("[A] situation may arise when it is impossible for [a putative] father to file the required notice of paternity prior to the statutory bar, through no fault of his own. In such a case, *due process requires that he be permitted to show that he was not afforded a reasonable opportunity to comply with the statute.*" (emphasis added)); *Swayne*, 795 P.2d at 642 (same).

21. *See* UTAH CODE ANN. §§ 58–37–8(2)(a)(i), 58–37–2(1)(ii), 58–37–2(1)(c).

22. As we explain in Part II of this opinion, a person is subject to prosecution only if he crosses into Utah with a controlled substance in his body but not merely the metabolite of a controlled substance.

present in his body.[23] We therefore reject Mr. Robinson's contention that the measurable amount provision violates the due process clause of the Utah Constitution.

B. *The Measurable Amount Provision Does Not Violate the Uniform Operation of Laws Clause of the Utah Constitution*

¶ 17 Mr. Robinson also contends that Utah's measurable amount provision violates the uniform operation of laws clause of the Utah Constitution. Article I, section 24 of the Utah Constitution provides, "All laws of a general nature shall have uniform operation."[24] To determine whether a statute violates the uniform operation of laws, we apply a three-step analysis: (1) whether the statute creates any classifications; (2) whether the classifications impose any disparate treatment on persons similarly situated; and (3) if there is disparate treatment, whether " 'the legislature had any reasonable objective that warrants the disparity.' "[25] The first two steps are threshold inquiries; we address the third step only if we find that the statute both creates classifications and imposes disparate treatment among persons similarly situated within those classifications.[26]

¶ 18 Here, the measurable amount provision classifies individuals based on whether they use controlled substances in Utah. The provision reaches only those persons who knowingly and intentionally use controlled substances and excludes those persons who do not knowingly and intentionally use controlled substances or who use controlled substances with a valid prescription.

¶ 19 Mr. Robinson argues that the measurable amount provision does not apply equally to all persons similarly situated within this class of unlawful drug users. He argues that the law does not apply equally because two persons who each ingest an equal amount of a controlled substance at the same time may be subject to prosecution for varying amounts of time depending on how fast each person's body metabolizes the drug. We are not persuaded.

¶ 20 Within the class of unlawful drug users generally, the measurable amount provision has uniform application. It imposes criminal penalties on all persons who "knowingly and intentionally" have "any measurable amount of a controlled substance" in their bodies.[27] It is irrelevant, therefore, whether an unlawful drug user is subject to prosecution for a longer period of time simply because his body cannot metabolize a controlled substance as quickly as another user's. The crime being punished is the act of using or being under the influence of a controlled substance, not the amount of the substance in the body. And the measurable amount provision punishes anyone guilty of that criminal act.

¶ 21 Mr. Robinson also argues that the measurable amount provision imposes disparate treatment on persons similarly situated within the class of unlawful drug users because the use of marijuana is classified as a class B misdemeanor,[28] while the use of methamphetamine, heroin, or cocaine are all punished as third degree felonies.[29] This

23. *See, e.g., Powell v. Texas,* 392 U.S. 514, 533–34, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (holding that a state public intoxication statute was not unconstitutional because even if the defendant could not control whether he was intoxicated, he could nevertheless "be held responsible *for his appearance in public* in a state of intoxication" (emphasis added)). The same logic applies here. Even if a person cannot remove a controlled substance once it has been introduced into his body, that person always has control over whether he is *in Utah.*

24. UTAH CONST. art. I, § 24.

25. *State v. Drej,* 2010 UT 35, ¶ 34, 233 P.3d 476 (quoting *State v. Schofield,* 2002 UT 132, ¶ 12, 63 P.3d 667).

26. *See id.*

27. *See* UTAH CODE ANN. §§ 58–37–8(2)(a)(i), 58–37–2(1)(ii), 58–37–2(1)(c).

28. *See id.* § 58–37–8(2)(d) (noting that any person who knowingly and intentionally possesses or uses "less than one ounce of marijuana, is guilty of a class B misdemeanor").

29. *See id.* § 58–37–8(2)(b)(ii) (noting that any person convicted of knowingly and intentionally possessing or using a controlled substance "classified in Schedule I or II ... is guilty of a third degree felony"); *see also id.* §§ 58–37–4(2)(a)(ii)(K) (classifying heroin as a Schedule I controlled substance); 58–37–4(2)(b)(i)(D) (classifying cocaine as a Schedule II controlled

argument has merit. Although the measurable amount provision has uniform application among the class of unlawful drug users generally, it does create sub-classifications that are subject to different penalties. The measurable amount provision makes it unlawful for any person to have *any* controlled substance in his body, but then imposes different criminal penalties depending on the type of controlled substance used. Particularly because the measurable amount provision itself defines the class as unlawful users of *"any measurable amount of a controlled substance,"* [30] we conclude that such unlawful drug users are similarly situated yet subject to disparate treatment based on the type of controlled substance used.

■ ¶ 22 Having concluded that the measurable amount provision discriminates among persons similarly situated, we must next determine whether the legislature had reasonable objectives to warrant the disparate treatment. This question involves a subsidiary three-part inquiry: (1) whether the classification is reasonable, (2) whether the objectives of the legislative action are legitimate, and (3) whether there is a reasonable relationship between the classification and the legislative purpose.[31] Because Mr. Robinson has not argued that there is a fundamental right or suspect class at issue, we proceed under a rational basis review.[32]

■ ¶ 23 "Broad deference is given to the legislature when assessing 'the reasonableness of its classifications and their relationship to legitimate legislative purposes.' " [33] The legislature has decided to punish the use of marijuana less severely than the use of heroin, cocaine, methamphetamine, and other Schedule I or II drugs. We conclude

that this classification is reasonable. For instance, it is widely accepted that the use of marijuana is less dangerous and less addictive than the use of methamphetamine, cocaine, or heroin. And the legislative guidelines for scheduling controlled substances reflect this understanding by requiring the advisory committee to classify each substance according to (1) its potential for abuse, (2) whether an accepted standard has been established for safe use in treatment for medical purposes, (3) the level of psychological or physiological dependence resulting from abuse of the substance, and (4) how the substance is classified under federal law.[34]

■ ¶ 24 We next determine whether the legislative objectives are legitimate. To answer this question, "we are not limited to considering those purposes that can be plainly shown to have been held by some or all legislators. We will sustain a classification if we can reasonably conceive of facts which would justify the distinctions." [35] Here, the legislature determined, or could have reasonably determined, that compared to marijuana, methamphetamine, heroin, and cocaine have more potential for abuse, are less likely to be used safely in treatment for medical purposes, and are more addictive, either psychologically or physiologically. Accordingly, the legislature has chosen to punish the use of marijuana as a class B misdemeanor, while punishing the use of heroin, cocaine, and methamphetamine as third degree felonies. This difference in classification is legitimate.

¶ 25 Finally, we must address whether there is a reasonable relationship between the classification and the legislative purposes.

substance); 58–37–4(2)(b)(iii)(B) (classifying methamphetamine as a Schedule II controlled substance).

30. *Id.* § 58–37–2(1)(c) (emphasis added).

31. *See Merrill v. Utah Labor Comm'n,* 2009 UT 26, ¶ 9, 223 P.3d 1089; *see also Drej,* 2010 UT 35, ¶ 34, 233 P.3d 476.

32. *See Merrill,* 2009 UT 26, ¶ 8, 223 P.3d 1089 (applying "rational basis review" after finding that "age is not a suspect classification"); *see also Drej,* 2010 UT 35, ¶ 34, 233 P.3d 476 (ex-

plaining that we apply "one of two, three-part inquiries" "depend[ing] on the level of scrutiny that must be applied to the statutory scheme").

33. *ABCO Enters. v. Utah State Tax Comm'n,* 2009 UT 36, ¶ 17, 211 P.3d 382 (quoting *Blue Cross & Blue Shield of Utah v. State,* 779 P.2d 634, 637 (Utah 1989)).

34. *See* Utah Code Ann. § 58–38a–204 (Supp. 2010).

35. *Blue Cross & Blue Shield,* 779 P.2d at 641 (internal quotation marks omitted).

The State has a legitimate interest in preventing individuals from using or being under the influence of controlled substances while in Utah. That interest increases as the relative harm that a controlled substance presents to society increases. Here, the legislature has concluded that the harm presented by the use of marijuana is less than the harm presented by the use of heroin, methamphetamine, or cocaine. The different criminal penalties reflect these relative harms. We conclude, therefore, that a reasonable relationship exists between the criminal classifications and the legislative objectives.

¶ 26 Mr. Robinson also contends that the measurable amount provision violates the uniform operation of laws clause because it exposes a marijuana user to prosecution for a longer period of time than a felony-level substance user since "marijuana remains in the body of a user for a period much longer than do[es] heroin, cocaine, or methamphetamine." He argues that this situation creates a classification that "treats marijuana use more harshly than the use of other controlled substances, even though it is clearly the legislatively-enacted policy of this state that marijuana use is a less serious violation." We disagree. Mr. Robinson provides no evidence that marijuana remains in the body longer than other drugs. But even assuming the veracity of this assertion, the criminal *punishment* imposed for the use of marijuana is *less severe* than the punishment imposed for the use of felony-level substances. This decreased punishment would account for any increased period of time that marijuana remains in the body and would, therefore, be reasonably related to the legitimate legislative objectives.

¶ 27 Accordingly, we hold that the measurable amount provision does not violate the uniform operation of laws clause of the Utah Constitution.

36. 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

37. *Id.* at 660 n. 1, 82 S.Ct. 1417 (emphasis added) (internal quotation marks omitted).

38. *Id.* at 666–67, 82 S.Ct. 1417 (emphasis added). The Court did not address whether the "under the influence" portion of the statute was

## II. THE MEASURABLE AMOUNT PROVISION OF THE UTAH CONTROLLED SUBSTANCES ACT DOES NOT VIOLATE THE CONSTITUTIONAL PRINCIPLES SET FORTH IN *ROBINSON V. CALIFORNIA*

¶ 28 The majority of Mr. Robinson's brief argues that Utah's measurable amount provision is unconstitutional under *Robinson v. California.*[36] In *Robinson,* the United States Supreme Court considered a California statute that made it a criminal offense to "be under the influence of, *or be addicted* to the use of narcotics."[37] The Court held that the statute was unconstitutional because the addiction portion did not punish "a person for the *use of narcotics,* for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration ... [but r]ather, makes the 'status' of narcotic addiction a criminal offense, for which the offender may be prosecuted at any time before he reforms."[38] Because the Court found narcotic addiction was an "illness which may be contracted innocently or involuntarily," it held that the statute punished a mere "status," which inflicted a cruel and unusual punishment in violation of the Eighth and the Fourteenth Amendment to the United States Constitution.[39]

¶ 29 Mr. Robinson contends that, like the California statute at issue in *Robinson,* Utah's measurable amount provision inflicts a cruel and unusual punishment in violation of the Eighth and the Fourteenth Amendment. He argues that rather than punish a voluntary act, such as ingestion of a controlled substance, the measurable amount provision criminalizes "simply the status of having been affected by a controlled substance at some previous time." In contrast, the State argues that the measurable amount

unconstitutional because the jury was instructed that they could convict the defendant if they found that his " 'status' or 'chronic condition' was that of being 'addicted to the use of narcotics.' " *Id.* at 665, 82 S.Ct. 1417.

39. *Id.* at 667, 82 S.Ct. 1417.

provision criminalizes the actual use of illegal narcotics. It reasons that "the ongoing consumption of a drug in the body is the quintessential use of that drug" and the stage of use that "is most hazardous to the user and those around him." We agree with the State.

¶ 30 *Robinson* stands for the proposition that a state cannot make "the 'status' of narcotic addiction a criminal offense";[40] it does not prevent a state from criminalizing the act of using or being under the influence of illegal drugs.[41] Utah's measurable amount provision criminalizes the act of using or being under the influence of a controlled substance in Utah. Although the "use" of a controlled substance clearly *begins* at ingestion, that "use" *continues* until the user is no longer under the influence of the drug. In other words, use stops and a user is no longer under the influence of drugs when the user no longer has a measurable amount of the drug in his or her body. For instance, after drinking alcohol, a person clearly continues to use or be under the influence of alcohol until no alcohol remains in his body. Likewise, after introducing methamphetamine into the body, a person continues to use or be under the influence of methamphetamine until it is no longer present in his body. We conclude, therefore, that the measurable amount provision does not criminalize the "status" of having previously been affected by a controlled substance as Mr. Robinson argues.

¶ 31 Our conclusion is reinforced by the fact that the measurable amount provision does not make it a crime for a person to have "the metabolite of a controlled substance" in his body.[42] A metabolite of a controlled substance is a byproduct created when the controlled substance is metabolized by the body;[43] thus, having the metabolite of a controlled substance in the body only indicates that the controlled substance was ingested at some prior point in time.[44] In other words, simply having the metabolite of

40.  370 U.S. at 666, 82 S.Ct. 1417.

41.  The *Robinson* court itself recognized that "[t]here can be no question of the authority of the State in the exercise of its police power to regulate the administration, sale, prescription and *use of* dangerous and habit-forming drugs," *id.* at 664, 82 S.Ct. 1417 (emphasis added) (internal quotation marks omitted), and implied that the California statute would have been constitutional if the California courts had "construe[d] the statute ... as [being] operative only upon proof of the *actual use* of narcotics within the State's jurisdiction." *Id.* at 665, 82 S.Ct. 1417 (emphasis added); *see also Powell v. Texas,* 392 U.S. 514, 533, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) ("The entire thrust of *Robinson*'s interpretation of the Cruel and Unusual Punishment Clause is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or ... has committed some *actus reus*."); *Smith v. Follette,* 445 F.2d 955, 961 (2d Cir.1971) ("[*Robinson*] was in no way intended to stand for the proposition that those who affirmatively commit crimes because of their condition may not be punished.... An addict who commits an affirmative illegal act, as distinguished from one whose only anti-social behavior is the mere presence of his addiction, may be constitutionally punished."); *State v. Brown,* 103 Ariz. 289, 440 P.2d 909, 910–11 (1968) ("[T]he state can impose criminal sanctions on a person who is unlawfully under the influence of a narcotic drug in Arizona. Being 'under the influence' constitutes a distinct act rather than a general 'status.' "); *State v. Margo,* 40 N.J. 188, 191 A.2d 43, 44 (1963) (per curiam) (explaining that in *Robinson,* " 'addiction' was something distinct both from 'use' and from being 'under the influence of' a narcotic").

42.  *See* Utah Code Ann. § 58–37–2(1)(c) (" 'Consumption' means ingesting or having any measurable amount of a controlled substance in a person's body, but ... *does not include the metabolite of a controlled substance.*" (emphasis added)).

43.  *See* Webster's Medical Desk Dictionary 428 (1986) (defining "metabolite" as "a product of metabolism"); The American Heritage Dictionary 789 (2d college ed. 1985) (defining "metabolite" as "[a]ny of various organic compounds produced by metabolism").

44.  For instance, the human body metabolizes methamphetamine into three metabolites, or byproducts of methamphetamine: p-OH-amphetamine and norephedrine (both inactive) and amphetamine (active). *See* Nat'l Highway Traffic Safety Admin., Drugs and Human Performance Fact Sheets 62 (2004) <available at> http://www.nhtsa.gov/people/injury/research/job185drugs/drugs_web.pdf. Therefore, as related to methamphetamine, the presence of p-OH-amphetamine or norephedrine in the body would only indicate that the person had previously introduced methamphetamine into his body, not that the person was actively under the influence of methamphetamine.

a controlled substance in the body is similar to a "status" of having previously ingested the controlled substance. Thus, if Utah's measurable amount provision criminalized the presence of metabolites in a person's body, Mr. Robinson's argument might have merit. But the measurable amount provision clearly precludes prosecution based on the presence of such metabolites.

¶ 32 Here, it is undisputed that Mr. Robinson's blood tested positive for methamphetamine, not a metabolite of methamphetamine. According to the National Highway Traffic Safety Administration, "[p]eak blood methamphetamine concentrations occur shortly after injection, a few minutes after smoking, and around 3 hours after oral dosing." [45] Moreover, the mean elimination half-life of methamphetamine is 10.1 hours following oral administration and 12.2 hours following intravenous injection.[46] Accordingly, Mr. Robinson was charged with *actively* using or being under the influence of methamphetamine while in Utah, not with having previously ingested methamphetamine. The State has a legitimate interest in preventing illegal drug use precisely because of the intoxicating effects experienced by the user while the drug is being metabolized by the body. It is during this period of intoxication that a person is most dangerous to himself and others. Indeed, if a particular substance did not produce an intoxicating effect on the user, it would be difficult to understand why the State would make the use of that substance illegal in the first place. As the New Jersey Supreme Court explained in *State v. Margo,*

> We see no reason why, if a person may constitutionally be punished for using a drug, he may not be punished for being under its "influence," for realistically the use of a drug offends society's interests precisely because of its baleful influence upon the person and the harm to which that influence may lead. In other words, being under the influence of a drug is . . . an active state, voluntarily induced and laden with a present capacity for further injury to society. We think society may use the criminal process to protect itself against that harm. *Robinson* is not to the contrary.[47]

¶ 33 Mr. Robinson also contends that the measurable amount provision violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[48] His arguments, however, are substantively the same as those made under his state due process claim.[49] The only notable difference is an additional citation to *Brockert v. Skornicka*[50] and *United States v. Sherpix, Inc.*[51] in support of his assertion that due process "means that the State may not punish someone for something that is

45. *Id.*

46. *Id.*

47. 191 A.2d at 45.

48. U.S. CONST. amend. XIV.

49. One difference is two additional scenarios that Mr. Robinson argues are "perfectly plausible under the [measurable amount provision]" but "simply unacceptable as a constitutional matter." First, he contends that the measurable amount provision allows "multiple prosecutions for what is actually only one crime." He reasons that if a person smokes marijuana in Logan, Utah, and is driven to St. George, Utah, that person is subject to prosecution in every county through which he passes. Second, Mr. Robinson argues that the measurable amount provision presents "the problem of forum shopping by law enforcement" because the State can choose to prosecute the individual in the jurisdiction where the ingestion occurred or in any jurisdiction where the individual had any measurable amount of the controlled substance in his body. However, because Mr. Robinson does not explain how these scenarios violate the United States Constitution or provide any analysis based on controlling authority, we reject each argument as being inadequately briefed. *See, e.g., State v. Green*, 2005 UT 9, ¶ 11, 108 P.3d 710 ("A brief which does not fully identify, analyze, and cite its legal arguments may be disregarded or stricken by the court . . . ." (internal quotation marks omitted)); *see also Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 ("[T]his court has repeatedly noted that a brief is inadequate if it merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority. An appellate court is not a depository in which [a party] may dump the burden of argument and research." (second and third alterations in original) (internal quotation marks omitted)).

50. 711 F.2d 1376, 1381 (7th Cir.1983).

51. 512 F.2d 1361, 1366 (D.C.Cir.1975).

beyond that person's ability to control." But these cases hold that due process requires notice of what the law requires and a reasonable opportunity to comply with those requirements.[52] As we explained under our state due process analysis, the measurable amount provision meets this standard. We therefore reject Mr. Robinson's federal due process claim.

¶ 34 Accordingly, we hold that Utah's measurable amount provision does not violate the constitutional principles set forth in *Robinson*. Rather than punish a person's "status" or "something beyond a person's ability to control," the measurable amount provision criminalizes the voluntary act of using a controlled substance when a person "knowingly and intentionally" has "any measurable amount of a controlled substance in [his or her] body."[53] Nothing in *Robinson* forbids the State from punishing such behavior.

## CONCLUSION

¶ 35 We hold that the measurable amount provision of the Utah Controlled Substances Act does not violate the Utah or the United States Constitution. First, the measurable amount provision does not violate the due process or the uniform operation of laws clause of the Utah Constitution. Second, the measurable amount provision does not violate the constitutional principles set forth in *Rob-*

*inson v. California*[54] because it punishes the act of using or being under the influence of a controlled substance while in Utah and requires the State to prove that such use was knowing and intentional. Finally, the measurable amount provision does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We therefore affirm the decision of the district court.

¶ 36 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge PEULER concur in Justice NEHRING's opinion.

¶ 37 Due to his retirement, Justice WILKINS did not participate herein. District Court Judge SANDRA N. PEULER sat.

¶ 38 Justice THOMAS R. LEE became a member of the Court on July 19, 2010, after oral argument in this matter, and accordingly did not participate.

---

52. *See Brockert*, 711 F.2d at 1381 (explaining that "a standardless ordinance is subject to facial attack under the due process clause through the vagueness doctrine" if the ordinance "does not give a person of ordinary intelligence a reasonable opportunity to comply with the law," meaning that "there is no notice of what the law requires," or that the ordinance "lacks explicit standards for its application, and thus impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis" (internal quotation marks omitted)); *see also Sherpix*, 512 F.2d at 1366 ("It is a fundamental principle that a person must have notice of what activity is prohibited before he may be held criminally liable for his actions.").

53. *See* Utah Code Ann. §§ 58–37–8(2)(a)(i), 58–37–2(1)(ii), 58–37–2(1)(c).

54. 370 U.S. at 666, 82 S.Ct. 1417.