*This opinion is subject to revision before final publication in the Pacific Reporter*

**2013 UT 23**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff*,
v.
MIGUEL MATEOS-MARTINEZ,
*Defendant*.

No. 20110431
Filed May 3, 2013

Third District, Salt Lake
The Honorable Deno G. Himonas
No. 071906003

Attorneys:

John E. Swallow, Att'y Gen., Marian Decker, Asst. Att'y Gen.,
for plaintiff

Samuel P. Newton, Ogden, for defendant

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

## INTRODUCTION

¶1 Miguel Mateos-Martinez appeals his conviction and sentence of life without parole on a charge of aggravated murder. He argues that the prosecution's decision to charge him with aggravated murder and the district court's denial of his motion to amend the charge to murder violated his constitutional rights. He also argues that the aggravated murder statute unconstitutionally provides prosecutors with unbridled discretion to make charging decisions. Finally, he argues that the admission of victim impact testimony at his sentencing hearing violated his constitutional rights. We affirm.

## BACKGROUND

¶2 On August 15, 2007, Mr. Mateos-Martinez entered a beauty salon in Salt Lake City where Faviola Hernandez was cutting a

friend's hair.[1] Two younger siblings of Ms. Hernandez were also present. Mr. Mateos-Martinez displayed a gun, ordered everyone to get down on the floor, and demanded money. He instructed Ms. Hernandez to go to the back room and retrieve any money that might be there. She went into the back room, but she returned with a gun of her own. Mr. Mateos-Martinez shot her once in the chest and fled. Ms. Hernandez died within minutes.

¶3 Mr. Mateos-Martinez was eventually apprehended in Mexico and brought back to Utah by United States Marshals. As part of the extradition negotiations, the State agreed not to seek the death penalty. Mr. Mateos-Martinez was charged with aggravated murder, two counts of aggravated robbery, and two counts of aggravated assault. Prior to trial, he moved to amend the first count from aggravated murder to murder. After a hearing, the district court denied the motion.

¶4 A jury convicted Mr. Mateos-Martinez on all counts. At a subsequent hearing, the State stipulated to the defense's request that one count of aggravated robbery be merged with the charge of aggravated murder. The district court judge then conducted sentencing proceedings. At these proceedings, the court heard victim impact testimony from Ms. Hernandez's mother and sister. Defense counsel made no objection to this testimony at the time. The district court judge sentenced the defendant to life without the possibility of parole.

¶5 Mr. Mateos-Martinez timely appealed to this court. We have jurisdiction under Utah Code section 78A-3-102(3)(i).

## STANDARD OF REVIEW

¶6 "Constitutional issues, including questions regarding due process, are questions of law that we review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177.

## ANALYSIS

¶7 Mr. Mateos-Martinez argues that the prosecution and the district court violated his constitutional rights by charging him with and trying him for aggravated murder instead of murder. He also argues that the content of the victim impact testimony at his sentencing hearing violated his constitutional rights.

---

[1] This court has already affirmed the aggravated robbery conviction of Mr. Mateos-Martinez's accomplice and getaway driver. *See generally State v. Jimenez*, 2012 UT 41, 284 P.3d 640.

## I. DENIAL OF THE MOTION TO AMEND THE CHARGE

¶8 Mr. Mateos-Martinez suggests that the prosecution's decision to charge him with aggravated murder and the district court's denial of his motion to reduce the charge from aggravated murder to murder violated his constitutional rights. First, he argues that the charging decision violated both the Uniform Operation of Laws Clause of article I, section 24 of the Utah Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[2] Second, he argues that the aggravated murder statute unconstitutionally affords prosecutors unbridled discretion to charge persons in his situation with aggravated murder.

*A. Decision to Charge Mr. Mateos-Martinez with Aggravated Murder*

¶9 "All laws of a general nature shall have uniform operation." UTAH CONST. art. I, § 24. To determine whether a statute meets this requirement, we apply a three-part test. We ask "(1) whether the statute creates any classifications; (2) whether the classifications impose any disparate treatment on persons similarly situated; and (3) if there is disparate treatment, whether the legislature had any reasonable objective that warrants the disparity." *State v. Robinson*, 2011 UT 30, ¶ 17, 254 P.3d 183 (internal quotation marks omitted).

¶10 Mr. Mateos-Martinez argues that the decision to charge him with aggravated murder was "a case of over-prosecution against people in his class." To support this argument, he offers a list of eight other criminal defendants represented by the Salt Lake City Legal Defender Assocation. These defendants were apparently all charged with both murder and aggravated robbery, but in their cases the aggravated robbery charges were not used to increase the charge of murder to aggravated murder, as was done in Mr. Mateos-Martinez's case.

¶11 He concedes that this list is not "a complete record of all relevant prosecutions in the state." We need not determine whether it is even a *representative* record, however, because on its face the list fails to provide sufficient information about these other defendants for us to determine whether they are "persons similarly situated" to Mr. Mateos-Martinez—a requirement for any claim that the uniform

---

[2] "Since our analysis under the uniform operation of laws provision is at least as rigorous as it would be under the federal equal protection provision, we accordingly limit our review to [the] state constitutional claim." *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶ 14, 211 P.3d 382 (internal quotation marks omitted).

operation of laws clause has been violated. The list provides only the names, case numbers, and races of the other defendants. We cannot tell whether they were charged, as was Mr. Mateos-Martinez, with multiple counts of aggravated robbery and with multiple other aggravated felonies. Further, we know nothing about the circumstances surrounding their crimes, and cannot determine their relative culpability, or discern what other factors may have informed the prosecutorial decision not to charge them with aggravated murder.

¶12    For example, one of the other listed defendants, Jesus Jimenez, was recently the subject of an appeal to this court. He was, it so happens, Mr. Mateos-Martinez's getaway driver. *See supra* ¶ 2 n.1. Because he was only an accomplice to another's crimes, he is not "similarly situated" to Mr. Mateos-Martinez. The other listed defendants may be similarly distinguishable. It is Mr. Mateos-Martinez's burden to show that they are not. "[A] reviewing court is not simply a depository in which [a] party may dump the burden of argument and research . . . ." *Broderick v. Apartment Mgmt. Consultants, L.L.C.*, 2012 UT 17, ¶ 9, 279 P.3d 391 (second alteration in original) (internal quotation marks omitted). Mr. Mateos-Martinez has not shown that the decision to charge him with aggravated murder "impose[d] any disparate treatment" on him, *Robinson*, 2011 UT 30, ¶ 17. He therefore cannot show that the charging decision violated the Uniform Operation of Laws Clause. For the same reason, he has not shown a violation of the federal Constitution. *See supra* ¶ 8 n.2.

### B. Aggravated Murder Statute

¶13    Mr. Mateos-Martinez argues in the alternative that the aggravated murder statute is unconstitutional on its face because it "offers prosecutors . . . unbridled discretion to choose arbitrarily whether to file charges as aggravated murder (carrying as penalties capital punishment and life without parole) or as murder (carrying lower penalties)."

¶14    Section 76-5-202(1) of the Utah Code provides that "[c]riminal homicide constitutes aggravated murder if the actor intentionally or knowingly causes the death of another [and] . . . the homicide was committed incident to an act, scheme, course of conduct, or criminal episode during which the actor committed or attempted to commit aggravated robbery." Citing *State v. Mohi*, 901 P.2d 991 (Utah 1995), Mr. Mateos-Martinez argues that this statute violates the Uniform Operation of Laws Clause because it does not

constrain the prosecution's discretion to charge a defendant with aggravated murder.

¶15    In *Mohi*, this court held that certain provisions of the Juvenile Courts Act violated that clause because it "permit[ted] two identically situated juveniles . . . to face radically different penalties and consequences without any statutory guidelines for distinguishing between them." *Id.* at 998. The provisions gave prosecutors "direct-file" authority, under which "prosecutors [had] discretion to file some charges against juveniles directly in adult circuit or district court while leaving other similarly accused offenders in juvenile court." *Id.* at 994. Upon determining that there was "no rational connection between the legislature's objective of balancing the needs of children with public protection and its decision to allow prosecutors total discretion in deciding which members of a potential class of juvenile offenders to single out for adult treatment," *id.* at 1002, we held the provisions unconstitutional, *id.* at 1004.

¶16    *Mohi* is distinguishable from the instant case. Indeed, *Mohi* explicitly distinguishes *itself* from the facts before us:

> The type of discretion incorporated in the [Juvenile Courts] Act is unlike traditional prosecutor discretion. Selecting a charge to fit the circumstances of a defendant and his or her alleged acts is a necessary step in the chain of any prosecution. It requires a legal determination on the part of the prosecutor as to which elements of an offense can likely be proved at trial. Moreover, such discretion is also beneficial to the public; it allows prosecutors to plea-bargain with offenders in some cases, saving the public the expense of criminal prosecutions. However, none of these benefits accompany the discretion to choose which juveniles to prosecute in adult rather than in juvenile court. The elements of the offense are determined by the *charging* decision, and *it is only the charging decision that is protected by traditional notions of prosecutor discretion*.

*Id.* at 1002–03 (second emphasis added).

¶17    In our case, prosecutors exercised such "traditional prosecutor discretion" in choosing to charge Mr. Mateos-Martinez with aggravated murder. He committed murder in the course of multiple aggravated felonies against multiple victims, including

children. The decision to charge aggravated murder under such circumstances is a classic exercise of prosecutorial discretion, and we will not second-guess such a decision on the showing made before us today. Similarly, we are not persuaded that the aggravated murder statute is unconstitutional. *Mohi* held that to provide prosecutors with unguided discretion to file the *same* charge against a juvenile defendant in either juvenile or adult court violated the uniform operation of laws clause. But aggravated murder is a different crime than murder, with an additional element that must be proved at trial. We reject Mr. Mateos-Martinez's argument, and affirm the district court's denial of his motion to amend the charge.

## II. SENTENCING HEARING

### A. Constitutional Standards

¶18    Mr. Mateos-Martinez argues that the admission of inflammatory victim impact statements at his sentencing hearing violated the prohibitions against cruel and unusual punishments located in article I, section 9 of the Utah Constitution and the Eighth Amendment to the United States Constitution.[3]

¶19    "[T]he Eighth Amendment does not bar, per se, victim impact evidence, but victim impact evidence may be inadmissible if the evidence is so prejudicial that it makes sentencing fundamentally unfair under the Due Process Clause." *State v. Ott*, 2010 UT 1, ¶ 25, 247 P.3d 344 (citing *Payne v. Tennessee*, 501 U.S. 808, 823, 827 (1991)). Further, "evidence that addresses the defendant's character or expresses the victim's opinion of the appropriate sentence at the penalty phase of trial is inadmissible under the Eighth Amendment." *Id.* (citing *Payne*, 501 U.S. at 830 n.2).

> *Payne* overturned *Booth v. Maryland*, which held the Eighth Amendment barred victim impact evidence. However, to the extent *Payne* overruled *Booth*, *Booth* retained viability for its holding that victim impact

---

[3] Mr. Mateos-Martinez only cites authority in support of his Eighth Amendment argument, and does not provide an independent analysis of article I, section 9 of the Utah Constitution. We therefore confine our analysis to the federal Constitution. *See Zissi v. State Tax Comm'n*, 842 P.2d 848, 858 (Utah 1992) ("As a threshold matter, we note that because [the appellant] has cited no authority and made no separate cruel and unusual argument under the state constitution, we will address this issue only in the context of the federal Constitution.").

evidence that addresses the defendant's character or expresses the victim's opinion of the appropriate sentence at the penalty phase of trial is inadmissible under the Eighth Amendment.

*Id.* (citations omitted).

¶20    Both *Payne* and *Booth* limit their holdings to *capital* sentencing proceedings. *Payne*, 501 U.S. at 817 ("This Court held [in *Booth*] by a 5-to-4 vote that the Eighth Amendment prohibits a jury from considering a victim impact statement at the sentencing phase *of a capital trial.*" (emphasis added)); *Booth v. Maryland*, 482 U.S. 496, 508 – 09 (1987) ("The admission of these emotionally charged opinions as to what conclusions the jury should draw from the evidence clearly is inconsistent with the reasoned decisionmaking we require *in capital cases.* . . . We conclude that the introduction of a [victim impact statement] at the sentencing phase of a *capital murder trial* violates the Eighth Amendment . . . ." (emphases added)).

¶21    To reiterate: while *Booth* held that the Eighth Amendment prevents the introduction of *any* victim impact evidence at the sentencing phase of a capital sentencing hearing, *Payne* overruled that absolute bar and limited it to a prohibition on "victim impact evidence that addresses the defendant's character or expresses the victim's opinion of the appropriate sentence at the penalty phase of trial." *Ott*, 2010 UT 1, ¶ 25.

¶22    The State argues that our decision in *Ott* is distinguishable in two ways. First, the State suggests that Mr. Mateos-Martinez's sentencing proceeding was not a *capital* sentencing proceeding, and therefore that the doctrine of *Payne* simply does not apply. Second, the State argues that because Mr. Mateos-Martinez was sentenced by a judge, rather than by a jury (as was the case in *Ott*), this court should apply a rebuttable presumption that judges are not influenced by inappropriate or irrelevant information.

¶23    For his part, Mr. Mateos-Martinez first argues that the Eighth Amendment analysis of *Payne* should be extended to sentencing proceedings where life without possibility of parole (LWOP) is the maximum sentence available to the sentencing authority. Second, he argues that the identity of the sentencing authority is irrelevant.

¶24    We agree with the State that *Ott* is distinguishable from the instant case. We understand *Payne* to apply only to capital sentencing proceedings; the proceedings in *Ott* were, as we explain

below, capital. Today we hold that the Eighth Amendment doctrine of *Payne*, which establishes an absolute bar on certain types of victim impact testimony, does not apply to sentencing proceedings where death is not an option.

¶25    First, we address the differences between the proceedings in *Ott* and those in the case before us today. In *Ott*, we referred to Mr. Ott's sentence of LWOP as having emerged from a "capital sentencing hearing." *Id.* ¶ 26. This determination informed our determination that *Payne* applied to that case. *See id.* ¶ 25. Mr. Ott, in fact, entered a guilty plea "in exchange for the State's agreement not to pursue the death penalty," *id.* ¶ 9, and Mr. Mateos-Martinez argues that this fact makes his case indistinguishable from Ott's, since in both cases the State agreed not to seek the death sentence and the sentencing authority never had the option to impose death.

¶26    But as a matter of statutory definition, at all relevant times leading up to Mr. Ott's sentencing, *all* aggravated murder charges were designated "capital," whether or not the prosecution ever requested the imposition of capital punishment. The criminal code has since been amended,[4] and now defines aggravated murder as a "capital felony" only if the state has filed "a notice of intent to seek the death penalty." *Compare* UTAH CODE § 76-5-202(3)(a)-(b) ("If a notice of intent to seek the death penalty has been filed, aggravated murder is a capital felony. . . . If a notice of intent to seek the death penalty has not been filed, aggravated murder is a *noncapital* first degree felony . . . ." (emphasis added)), *with id.* § 76-5-202(2) (Supp. 2006) ("Aggravated murder is a capital felony."); *see also Tillman v. State*, 2012 UT App 289, ¶ 1 n.2, 288 P.3d 318 ("Aggravated murder was previously labeled [m]urder in the first degree and classified as a capital offense, regardless of the penalty sought. Under the current statute, aggravated murder is a capital felony only if the State pursues the death penalty." (alteration in original) (citation omitted) (internal quotation marks omitted)). Therefore, while Mr. Ott's sentencing proceeding was treated as "capital" even though death was never "on the table," Mr. Mateos-Martinez is clearly not eligible for such treatment.

---

[4] The statute was amended in 2007, with an effective date of April 30 of that year. Aggravated Murder Amendments, ch. 275, § 3, 2007 Utah Laws 1150, 1153. Mr. Ott committed his crime the summer of 2002. *Ott*, 2010 UT 1, ¶ 1. Mr. Mateos-Martinez committed his in August 2007. Therefore, the old version of the statute applied to Mr. Ott's case and the new version applies to this case.

¶27 The new version of the aggravated murder statute differs from the old in more than just the label it applies. Although the State in Mr. Ott's case never asked for the death penalty, the sentencing decision in that case—a choice between LWOP and a lesser sentence—was made by a jury. *Ott*, 2010 UT 1, ¶ 10. But the same bill that amended the aggravated murder statute created a new statutory section in the sentencing chapter of the criminal code. Aggravated Murder Amendments, ch. 275, §§ 2, 3, 2007 Utah Laws 1152–53. This section provides that "[a] person who has pled guilty to or been convicted of first degree felony aggravated murder under Section 76-5-202 shall be sentenced by the court. . . . The sentence under this section shall be life in prison without parole or an indeterminate prison term of not less than 25 years and which may be for life." UTAH CODE § 76-3-207.7(1)–(2).

¶28 The State's two arguments for distinguishing *Ott*—that *Ott* dealt with a capital sentencing proceeding, while this case does not, and that Mr. Ott was sentenced by a jury, while Mr. Mateos-Martinez was sentenced by a judge—thus both relate to these changes in the law. The legislature has said that aggravated murder is only a "capital felony" if the State files a notice of intent to seek death. UTAH CODE § 76-5-202(3)(a). Mr. Mateos-Martinez was extradited from Mexico pursuant to an agreement that the State would not do so. His sentencing proceeding was therefore not "the sentencing phase of a capital trial," *Payne*, 501 U.S. at 817. Furthermore, Mr. Mateos-Martinez was sentenced by the court pursuant to section 76-3-207.7.

¶29 For these reasons, the Eighth Amendment's absolute ban on victim impact evidence that addresses the defendant's character or expresses the victim's character or expresses the victim's opinion of the appropriate sentence, established by *Booth* and limited by *Payne*, does not apply to Mr. Mateos-Martinez's sentencing proceeding. Accordingly, we must consider whether to extend that absolute ban to noncapital sentencing proceedings conducted by a

judge pursuant to section 76-3-207.7 as a matter of federal law.[5] For the following reasons, we decline to do so.

¶30    Mr. Mateos-Martinez urges that we extend the ban against these types of victim impact evidence to all sentencing proceedings where LWOP is an available penalty. To support this position, he refers us to *Ott*. But, as noted above, that case examined proceedings that were statutorily deemed "capital." He further argues that the United States Supreme Court has recently suggested that LWOP implicates similar Eighth Amendment concerns to those treated in *Booth* and *Payne*, citing *Graham v. Florida*, 130 S. Ct. 2011, 2027 (2010) ("It is true that a death sentence is unique in its severity and irrevocability, yet life without parole sentences *share some characteristics* with death sentences that are shared by no other sentences." (emphasis added) (internal quotation marks omitted)). But *Graham* considered LWOP only in the context of juvenile defendants. *Id.* at 2017–18 ("The issue before the Court is whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime."). *Graham* does not hold that LWOP is *identical* to death in its constitutional implications and does not discuss victim impact testimony. As such, we do not understand *Ghraham* to establish an absolute ban on the presentation of certain types of victim impact testimony in noncapital sentencing proceedings for adult offenders.

¶31    Our reluctance to extend the Eighth Amendment per se ban to noncapital proceedings is strengthened by the identity of the sentencing authority in this case. Mr. Mateos-Martinez was sentenced by a judge. "A sentencing judge is not required to articulate whether specific information was inappropriate for consideration, and the mere introduction of potentially improper information is not sufficient to establish reliance." *State v. Moa*, 2012 UT 28, ¶ 40, 282

___

[5] "[W]e have never addressed what limitations, if any, the state constitution places on the use of victim impact evidence during the penalty phase of a capital trial." *State v. Maestas*, 2012 UT 46, ¶ 307, ___ P.3d ___. For the reasons explained herein, the sentencing proceeding at issue here was noncapital. We need not and do not determine whether the state constitution places any limitations on the use of victim impact testimony in such noncapital proceedings, because no independent constitutional argument is before us. *See supra* ¶ 18 n.3. We consider only whether the Eighth Amendment, as interpreted by the United States Supreme Court in *Payne* and applied by this court in *Ott*, has the same implications for noncapital sentencing proceedings as for capital ones.

P.3d 985. Judges "are presumably conditioned by education, training and experience to render service of a professional character under a discipline which should involve a high degree of integrity." *Ellis v. Gilbert*, 429 P.2d 39, 41 (Utah 1967); *see also State v. Joubert*, 455 N.W.2d 117, 130 (Neb. 1990), *cert. denied*, 499 U.S. 931 (1991) ("*Booth* is . . . distinguishable from this case in that the sentence in *Booth* was imposed by a jury of laypersons and, here, the sentences were imposed by a panel of jurists. . . . [I]t is presumed that judges disregard evidence which should not have been admitted.")

¶32    We therefore hold that there is no Eighth Amendment bar to certain types of victim impact testimony in noncapital, adult sentencing proceedings before a judge. Further, it does not appear to us that the Eighth Amendment speaks at all to the use of such testimony in such cases.

### B. Ineffectiveness of Counsel and Plain Error

¶33    In light of our conclusion that the federal Constitution does not preclude the admission of victim impact testimony in noncapital cases, there is no basis on which we could hold that defense counsel's failure to object to the testimony constituted ineffective assistance of counsel. Nor, obviously, can we deem the trial court's admission of such evidence plain error.

¶34    Mr. Mateos-Martinez does advance general arguments in his brief regarding the relevance of the testimony and its highly inflammatory character, citing Utah Code section 77-38-4(4)-(5) (The "court shall have the right to limit any victim's statement to matters that are relevant to the proceeding" and not "disruptive."). However, his only claims in this regard relate to his position that federal constitutional law prohibits such evidence; they do not appear to advance a separate attack on the use of this evidence.

¶35    As noted above, we reject Mr. Mateos-Martinez's Eighth Amendment claims today. Evidentiary, statutory, or other constitutional problems that may exist with victim impact testimony of this kind in noncapital cases are open questions for another day.

## CONCLUSION

¶36    Mr. Mateos-Martinez has not shown that the district court erred in denying his motion to amend the charge against him from aggravated murder to murder. Further, we hold that the introduction of the victim impact testimony in this case did not violate the Eighth Amendment; therefore, its admission could not have been plain error, nor could it have been ineffective assistance

of counsel to fail to object to it.  The conviction and sentence are affirmed.

_____