*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 30**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

WYATT JEFF OUTZEN,
*Appellant.*

No. 20150953
Filed June 7, 2017

On Direct Appeal

Fourth District, Provo
The Honorable Claudia Laycock
No. 145400088

Attorneys:

Jeff Buhman, Lance E. Bastian, Provo, for appellee

Michael J. Petro, Dallas Young, Provo, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE HIMONAS, and JUSTICE PEARCE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶ 1 Hours after ingesting marijuana, Wyatt Jeff Outzen fell asleep at the wheel and caused a two-car collision. Sobriety tests revealed that Mr. Outzen was not too impaired to drive, but a blood test revealed that he had the primary metabolite of marijuana in his system. He was charged under Utah Code section 41-6a-517 for operating a motor vehicle with a metabolite of a controlled substance in his body. After entering a guilty plea in justice court, Mr. Outzen appealed his conviction to the district court. There, he moved to dismiss, arguing that the plain language of section 41-6a-517 requires

a showing of impairment and that the statute violates the Eighth and Fourteenth Amendments of the United States Constitution and the uniform operation of laws provision of the Utah Constitution. The district court denied his motion and Mr. Outzen once again entered a guilty plea, reserving his right to appeal. We hold that the plain language of section 41-6a-517 does not require impairment and that the statute does not violate the federal or state constitutions. Accordingly, we affirm.

## Background

¶ 2   Mr. Outzen fell asleep while driving and struck the back of another vehicle. Utah Highway Patrol (UHP) troopers responded and "saw and smelled signs of marijuana in [Mr.] Outzen's vehicle." They searched his car, but did not find any contraband. The troopers observed a lack of convergence in Mr. Outzen's eyes and green mucus covering his tongue, which they recognized as signs that he had recently smoked marijuana. Mr. Outzen agreed to let the troopers administer field sobriety tests, which indicated that he "was not too impaired to drive." Mr. Outzen told the troopers that "he smokes marijuana, consumes it about every other day, and the last time that he consumed it was about 7 p.m. the night before." He was taken to a UHP office, where he submitted breath, urine, and blood samples. His blood tested positive for the primary metabolite of marijuana.

¶ 3   Mr. Outzen was charged under Utah Code section 41-6a-517 with one count of driving with a metabolite of a controlled substance in the body, a class B misdemeanor.[1] The case was filed in Utah County Justice Court, where Mr. Outzen entered a guilty plea. He then appealed to the Fourth Judicial District Court for a trial de novo.

¶ 4   In the district court, Mr. Outzen filed a motion to dismiss, arguing that the plain language of section 41-6a-517 requires a showing of impairment and that the statute violates provisions of both the federal and state constitutions. The court denied his motion and set the case for a bench trial. Mr. Outzen chose to enter a plea of

---

[1] The State also charged Mr. Outzen with one count of following too closely, a class C misdemeanor, but later dismissed the charge. *See* UTAH CODE § 41-6a-711(1)(a).

no contest, but reserved his right to appeal, which he timely did.[2] We have jurisdiction under Utah Code section 78A-3-102(3)(b).[3]

**Standard of Review**

¶ 5   Mr. Outzen raises three issues on appeal. First, he asks us to determine whether the district court correctly interpreted Utah Code section 41-6a-517. That court concluded that the statute criminalized operating or being in actual physical control of a motor vehicle with any measurable amount of a controlled substance, including a metabolite, in one's body, regardless of the substance's potential to cause impairment. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions."[4]

¶ 6   Mr. Outzen then asks us to determine whether the district court correctly concluded that section 41-6a-517 does not violate the Eighth and Fourteenth Amendments of the United States Constitution and article I, section 24 of the Utah Constitution. "Whether a statute is constitutional presents a question of law. We presume the statute is constitutional, and we 'resolve any reasonable doubts in favor of constitutionality.'"[5]

---

[2] Mr. Outzen filed his appeal with the court of appeals. The court of appeals then certified the case to this court.

[3] During oral argument, we raised the question of whether we have jurisdiction over this case. Under Utah Code section 78A-7-118(8), after an appeal from justice court to the district court, "[t]he decision of the district court is final and may not be appealed unless the district court rules on the constitutionality of a statute or ordinance." Mr. Outzen raises issues of the correct interpretation of Utah Code section 41-6a-517 and the constitutionality of that statute under both the federal and state constitutions. Because the issue of constitutionality presupposes the interpretation of the statute, we conclude that we have jurisdiction to reach both issues on appeal.

[4] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (citation omitted).

[5] *Brown v. Cox*, 2017 UT 3, ¶ 11, 387 P.3d 1040 (citations omitted).

**Analysis**

### I. The Plain Language of Utah Code Section 41-6a-517 Does Not Require Impairment

¶ 7   Utah Code section 41-6a-517 provides that "[i]n cases not amounting to a violation of Section 41-6a-502 [the DUI statute], a person may not operate or be in actual physical control of a motor vehicle within this state if the person has any measurable controlled substance or metabolite of a controlled substance in the person's body." The district court read the statute to "unambiguously criminalize[] 'operat[ing] or be[ing] in actual physical control of a motor vehicle' with 'any measurable controlled substance or metabolite of a controlled substance in the person's body,' regardless of the metabolite's potential, or not, to cause impairment." The court specifically addressed the phrase "in cases not amounting to," reasoning that the phrase distinguishes section 41-6a-517 from section 41-6a-502, the DUI statute, by "negat[ing] any requirement to show actual or potential impairment."

¶ 8   Mr. Outzen argues that the district court's "construction of that clause is incorrect because the only reasonable reading of the '[i]n cases not amounting to' clause is that the scope of prohibited conduct under [section 41-6a-517] is necessarily similar to the scope of prohibited conduct under the DUI statute." He further argues that to not read the two statutes as similar in scope renders the phrase "in cases not amounting to" superfluous in section 41-6a-517. He reasons that the DUI statute "acknowledges that impairment occurs by degrees, and that a person only violates that statute when his or her impairment rises to a level that the person is *incapable* of safe operation of a vehicle. Prior to the point of incapacity of safe operation of a vehicle, the person has not violated the statute."[6] He concludes that, "by its reference to the DUI statute," section 41-6a-517 "sets the scope of prohibited conduct . . . on the same spectrum

---

[6] This is not entirely true. The DUI statute criminalizes driving under three conditions, only one of which mentions "render[ing] the person incapable of safely operating a vehicle." *See* UTAH CODE § 41-6a-502(1)(b). The other conditions are (1) "sufficient alcohol in the person's body that a subsequent chemical test shows that the person has a blood or breath alcohol concentration of .08 grams or greater at the time of the test" and (2) "a blood or breath alcohol concentration of .08 grams or greater at the time of operation or actual physical control." *Id.* § 41-6a-502(1)(a), (c).

identified in the DUI statute"—in other words, section 41-6a-517 also requires a showing of impairment.

¶ 9 "[A] statute's unambiguous language 'may not be interpreted to contradict its plain meaning.'"[7] "[W]e do not view individual words and subsections in isolation; instead, our statutory interpretation 'requires that each part or section be construed in connection with every other part or section so as to produce a *harmonious whole.*'"[8] We "interpret[] statutes to give meaning to all parts, and avoid[] rendering portions of the statute superfluous."[9] Finally, when we can determine the meaning of the statute from the plain language alone, "'no other interpretive tools are needed,' and our task of statutory construction is typically at an end."[10]

¶ 10 Mr. Outzen relies on section 41-6a-517's reference to the DUI statute to incorporate language of impairment into section 41-6a-517. But there is no language of impairment in section 41-6a-517 itself. The conduct prohibited by section 41-6a-517 is "operat[ing] or be[ing] in actual physical control of a motor vehicle" with "any measurable controlled substance or metabolite of a controlled substance" in the person's body.[11] Employing the phrase "[i]n cases not amounting to a violation of [the DUI statute]" does not limit the meaning of "any measurable controlled substance or metabolite of a controlled substance." A person who has introduced a measurable controlled substance into his or her system and then chooses to drive is in violation of section 41-6a-517. If the level of the measurable controlled substance results in the individual being "incapable of safely operating a vehicle," he or she is also then in violation of the DUI statute. In other words, to the extent that violation of section 41-6a-517 rises to a level of impairment, the "not amounting to" clause allows an individual to be charged under either statute—it does not limit the applicability of section 41-6a-517.

---

[7] *State v. Burns*, 2000 UT 56, ¶ 25, 4 P.3d 795 (citation omitted).

[8] *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (citation omitted).

[9] *LKL Assocs., Inc. v. Farley*, 2004 UT 51, ¶ 7, 94 P.3d 279.

[10] *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (citation omitted).

[11] UTAH CODE § 41-6a-517(2).

¶ 11 Mr. Outzen's reading of section 41-6a-517 is in conflict with a key term of the statute. The statute criminalizes driving with "*any* measurable controlled substance or metabolite of a controlled substance in the person's body." (Emphasis added.) To limit the measurable controlled substances and metabolites to those that cause impairment would reduce the scope of the statute to less than "*any*"—a result that is incompatible with the legislature's use of the word *any*.

¶ 12 The language of section 41-6a-517 is clear. An individual violates the statute when he or she "operate[s] or [is] in actual physical control of a motor vehicle" with "any measurable controlled substance or metabolite of a controlled substance in the person's body." Because the plain language of section 41-6a-517 is unambiguous, "'no other interpretive tools are needed,' and our task of statutory construction is . . . at an end."[12]

## II. Utah Code Section 41-6a-517 Does Not Violate the United States Constitution

¶ 13 Mr. Outzen argues that Utah Code section 41-6a-517 violates the Eighth and Fourteenth Amendments of the United States Constitution because it constitutes a status offense under *Robinson v. California*.[13] In *Robinson*, the United States Supreme Court held that a statute was unconstitutional because the statute made it a criminal offense to "be addicted to the use of narcotics."[14] The Court stated that criminalizing an addiction did not punish "a person for the use of narcotics," but "[r]ather, . . . makes the 'status' of narcotic addiction a criminal offense, for which the offender may be prosecuted 'at any time before he reforms.'"[15] The Court recognized that "narcotic addiction is an illness . . . . which may be contracted innocently or involuntarily," and that to "imprison[] a person thus afflicted as a criminal . . . inflicts a cruel and unusual punishment" in violation of the Eighth and Fourteenth Amendments.[16]

---

[12] *Bagley*, 2016 UT 48, ¶ 10 (citation omitted).

[13] 370 U.S. 660 (1962).

[14] *Id.* at 660.

[15] *Id.* at 666.

[16] *Id.* at 667.

¶ 14 In *State v. Robinson*,[17] this court distinguished a Utah statute from the one at issue in *Robinson v. California.* The Utah statute, a provision of the Utah Controlled Substances Act, "makes it unlawful for any person to 'knowingly and intentionally' have 'any measurable amount of a controlled substance in [his or her] body.'"[18] The defendant in *State v. Robinson* argued that, like the statute found unconstitutional in *Robinson v. California*, Utah's "measurable amount provision criminalizes 'simply the status of having been affected by a controlled substance at some previous time.'"[19] We distinguished *Robinson v. California*'s holding—that a state cannot make "the 'status' of narcotic addiction a criminal offense"[20]—from the function of Utah's measurable amount provision, which "criminalizes the act of using or being under the influence of a controlled substance in Utah."[21] We further held that "[a]lthough the 'use' of a controlled substance clearly *begins* at ingestion, that 'use' *continues* until the user is no longer under the influence of the drug."[22]

¶ 15 Mr. Outzen contends that there is a critical factual distinction between *Robinson v. California* and *State v. Robinson*: the defendant in *State v. Robinson* had "active controlled substances in his system," while the defendant in *Robinson v. California* had "only inactive metabolites in his system."[23] He argues that this distinction

---

[17] 2011 UT 30, 254 P.3d 183.

[18] *Id.* ¶ 8 (alteration in original) (quoting UTAH CODE §§ 58-37-8(2)(a)(i), 58-37-2(1)(ii), 58-37-2(1)(c) (Supp. 2010)).

[19] *Id.* ¶ 29.

[20] *Id.* ¶ 30 (quoting *Robinson*, 370 U.S. at 666).

[21] *Id.* ¶ 30.

[22] *Id.*

[23] Mr. Outzen's assertion mischaracterizes the facts in *Robinson v. California*. There is no mention of metabolites in the defendant's system in that case. Officers testified that they had observed physical signs of narcotics use on the defendant's arms and that the defendant "had admitted to the occasional use of narcotics." 370 U.S. at 661. The defendant denied "he had ever used narcotics or been addicted to their use. He explained the marks on his arms as resulting from an allergic condition contracted during his military service." *Id.* at 662.

drives the analysis in both cases and extends to his own, reasoning that he "did not have controlled substances in his system; he only had indicators that he previously had controlled substances in his system." But the dispositive issue in both cases—and here—was not the presence of active or inactive controlled substances, but the difference between a status and an act. In attempting to categorize his offense as a status, Mr. Outzen ignores the action required by section 41-6a-517: he was operating or was in actual physical control of a motor vehicle while he had the controlled substance's metabolite in his body. Section 41-6a-517 does not criminalize the status of being addicted to—or even the status of having previously used—a controlled substance. It also does not criminalize simply having a metabolite of a controlled substance in the body. It criminalizes the act of driving while "any measurable" amount or "metabolite" of the controlled substance is in the driver's body. Accordingly, we hold that section 41-6a-517 is not a status offense and therefore does not violate the Eighth and Fourteenth Amendments of the United States Constitution.

### III. Utah Code Section 41-6a-517 Does Not Violate the Uniform Operation of Laws Provision of the Utah Constitution

¶ 16 Article I, section 24 of the Utah Constitution provides, "All laws of a general nature shall have uniform operation." "The concept underlying this provision is 'the settled concern of the law that the legislature be restrained from the fundamentally unfair practice' of classifying persons in such a manner that those who are similarly situated with respect to the purpose of a law are treated differently by that law, to the detriment of some of those so classified."[24] "A statute is not uniform in its operation, and is thus unconstitutional, if (1) 'the statute creates any classifications,' (2) those classifications 'impose any disparate treatment on persons similarly situated,' and (3) 'the legislature had [no] reasonable objective that warrants the disparity.'"[25] In considering the third requirement—the legislature's reasonable objectives underlying the disparate treatment—we must determine "the level of scrutiny that must be applied to the statutory scheme."[26] "Where a legislative enactment implicates a 'fundamental

---

[24] *Blue Cross & Blue Shield of Utah v. State*, 779 P.2d 634, 637 (Utah 1989) (citation omitted).

[25] *State v. Roberts*, 2015 UT 24, ¶ 41, 345 P.3d 1226 (alteration in original) (citation omitted).

[26] *State v. Drej*, 2010 UT 35, ¶ 34, 233 P.3d 476.

or critical right' or creates classifications which are 'considered impermissible or suspect in the abstract,' we apply a heightened degree of scrutiny."[27] But where "there is no suspect classification at work and no apparent fundamental right" at issue, we apply a "rational basis" review.[28]

¶ 17 Mr. Outzen contends that Utah Code section 41-6a-517 violates the uniform operation of laws provision because it "creates disparate treatment between persons similarly situated" and "there is no rational nexus between the legislative objective . . . and the chosen classification." The State responds that while "the statute imposes 'disparate treatment' on the two groups," those groups are not similarly situated. The State also argues that "the legislature had various 'reasonable objective[s] that warrant the disparity' in their treatment."

¶ 18 To begin the analysis, we must first consider whether Utah Code section 41-6a-517 creates any classifications. As previously stated, an individual violates the statute when he or she "operate[s] or [is] in actual physical control of a motor vehicle" with "any measurable controlled substance or metabolite of a controlled substance" in his or her body. Subsection (3) of the statute provides three affirmative defenses—the controlled substance was "involuntarily ingested by the accused," "prescribed by a practitioner for use by the accused," or "otherwise legally ingested." These affirmative defenses classify individuals into two groups: those who illegally ingest a controlled substance and then operate or are in actual physical control of a motor vehicle and those who legally or involuntarily ingest a controlled substance and then operate or are in actual physical control of a motor vehicle.

¶ 19 Having determined that section 41-6a-517 creates classifications, we next inquire as to whether those classifications impose any disparate treatment on persons similarly situated. "When persons are similarly situated, it is unconstitutional to single out one person or group of persons from among a larger class on the basis of a tenuous justification that has little or no merit."[29] To determine if individuals are similarly situated, we have frequently

---

[27] *Gallivan v. Walker*, 2002 UT 89, ¶ 40, 54 P.3d 1069 (citation omitted).

[28] *State v. Canton*, 2013 UT 44, ¶ 40, 308 P.3d 517.

[29] *Malan v. Lewis*, 693 P.2d 661, 671 (Utah 1984).

looked to the context created by the challenged statute and within which the individuals acted.[30] Section 41-6a-517 is addressed to those who drive after ingesting a controlled substance. Among this group, some chose to voluntarily and illegally ingest a controlled substance, while some did so legally or involuntarily. It is therefore reasonable to conclude that the two groups are not similarly situated. But "[e]ven if some distinctions could be made among groups within a classification, . . . we may still affirm the validity of the statute where 'on the whole, . . . it appear[s] to be a reasonable attempt to achieve the legitimate government ends.'"[31]

¶ 20 In order to determine whether section 41-6a-517 is a reasonable attempt to achieve legitimate government ends, we must consider "whether the legislature's classification is reasonably related to its legitimate objectives."[32] Because Mr. Outzen concedes that "there is no suspect classification at work and no apparent fundamental right" at issue, we review the legislature's objective under "rational basis" review.[33] This third step requires us to consider "(1) whether the classification is reasonable, (2) whether the

---

[30] For example, in *State v. Roberts*, we held that Utah Code section 76-5a-3 (2009), which "imposes criminal and civil liability on individuals who 'knowingly produce[], possess[], or possess[] with intent to distribute' or 'intentionally distribute[] or view[] child pornography," creates a classification by "exempt[ing] from liability law enforcement officers who encounter child pornography as part of a criminal investigation and employees of certain organizations acting in good faith and within the scope of their employment to report or prevent child pornography." 2015 UT 24, ¶ 42 (quoting UTAH CODE § 76-5a-3 (2009)). But we held that the classes created by the statute were not similarly situated because "the key distinction between the individuals in each classification is the context within which they view, possess, or distribute child pornography." *Id.* ¶ 43. *See also Slater v. Salt Lake City*, 206 P.2d 153, 163 (Utah 1949) ("It may be admitted that under certain circumstances, [individuals in one class] are a different class than [individuals in another]. However, under the circumstances of this case, we conclude they are similarly situated.").

[31] *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶ 24, 211 P.3d 382 (fourth alteration in original) (citation omitted).

[32] *State v. Angilau*, 2011 UT 3, ¶ 31, 245 P.3d 745 (citation omitted).

[33] *Canton*, 2013 UT 44, ¶ 40.

objectives of the legislative action are legitimate, and (3) whether there is a reasonable relationship between the classification and the legislative purpose."[34]

¶ 21 Mr. Outzen argues that the purpose of Utah Code section 41-6a-517 is "not to deter illegal drug use," but to "protect[] citizens on or near the roadways of the state from drivers operating vehicles while under the influence of impairing substances." This may well be one of the statute's purposes, but a statute is seldom enacted for a single purpose. And "we judge such enactments on the basis of *reasonable* or actual legislative purposes."[35]

¶ 22 In order to assess the legislative purposes of a statute, we begin with the language of the statute.[36] And here, the language of section 41-6a-517 allows us to infer that both protection of the public's safety and deterrence of illegal drug use are among its purposes. We may also look to the legislative history to support our conclusions, although we note that "we are not limited to considering those purposes that can be plainly shown to have been held by some or all legislators."[37] When section 41-6a-517 was proposed to the state legislature, its sponsor articulated concerns that motivated the law's creation.[38] He emphasized the need for a prosecutable offense of driving while under the influence of illicit drugs and the impossibility of establishing a level of impairment comparable to the DUI limit.

¶ 23 "Broad deference is given to the legislature when assessing 'the reasonableness of its classifications and their relationship to legitimate legislative purposes.'"[39] The legislature has chosen to provide an affirmative defense for individuals who operate a motor vehicle after legally or involuntarily ingesting a controlled

---

[34] *State v. Robinson*, 2011 UT 30, ¶ 22, 254 P.3d 183.

[35] *Blue Cross & Blue Shield*, 779 P.2d at 637 (emphasis added) (citation omitted).

[36] *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (stating that "[t]he best evidence of the legislature's intent is the plain language of the statute itself" (alteration in original) (citation omitted)).

[37] *Blue Cross & Blue Shield*, 779 P.2d at 641.

[38] Utah Senate Floor Debates, S.B. 101, 50th Leg., 1994 Gen. Sess. (Feb. 14, 1994) (statements of Sen. Craig Peterson).

[39] *Robinson,* 2011 UT 30, ¶ 23 (citation omitted).

substance.[40] "[W]e are not limited to considering those purposes that can be plainly shown to have been held by some or all legislators. We will sustain a classification if we can reasonably conceive of facts which would justify the distinctions."[41] We conclude that the classification is reasonable, that the legislative objectives are reasonable, and that there is a reasonable relationship between the classification and the legislative purposes. The legislature determined, "or could have reasonably determined,"[42] that the classification created by Utah Code section 41-6a-517 would deter illegal drug use and maintain public safety.[43] The classification deters illegal drug use by making it a chargeable offense to voluntarily and illegally ingest a controlled substance and then operate a motor vehicle. It also promotes public safety by discouraging individuals who have ingested controlled substances from operating motor vehicles and creating potentially dangerous driving conditions. While the legislature may have considered other purposes in enacting section 41-6a-517, these are sufficient under a rational basis review to hold that the statute does not violate the uniform operation of laws provision of the Utah Constitution.[44]

## Conclusion

¶ 24 A person violates Utah Code section 41-6a-517 if he or she operates or is in actual physical control of a motor vehicle with any measurable amount or metabolite of a controlled substance in his or her body. We hold that the plain language of this statute does not require an additional finding of impairment. We further hold that the statute does not create a status offense in violation of the Eighth and Fourteenth Amendments of the United States Constitution, and it does not violate the uniform operation of laws provision of the Utah Constitution. We accordingly affirm the judgment of the district court.

---

[40] *See* UTAH CODE § 41-6a-517(3).

[41] *Robinson*, 2011 UT 30, ¶ 24 (citation omitted).

[42] *Id.*

[43] *Supra* ¶ 22.

[44] *See DIRECTV v. Utah State Tax Comm'n*, 2015 UT 93, ¶ 53, 364 P.3d 1036.