*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2020 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

STEPAN BADIKYAN,
*Petitioner.*

No. 20180883
Heard October 8, 2019
Filed January 30, 2020

On Certiorari to the Utah Court of Appeals

Second District, Farmington
The Honorable David M. Connors
No. 141700828

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher D. Ballard, Asst. Solic. Gen.,
Salt Lake City, for respondent

Scott L. Wiggins, Salt Lake City, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    Stepan Badikyan pled guilty to attempted murder. Before
sentencing, he filed a motion to withdraw his plea, which the district
court denied. When Mr. Badikyan appealed this denial to the court
of appeals, he raised a new challenge under the plain-error exception
to the preservation rule. Relying on our recent interpretations of

Utah's Plea Withdrawal Statute[1] in *State v. Rettig*[2] and *State v. Allgier*,[3] the court of appeals held that it lacked jurisdiction to hear Mr. Badikyan's unpreserved claim. He then petitioned for a writ of certiorari, which we granted. We affirm the court of appeals. In so doing, we hold that the Plea Withdrawal Statute bars review of unpreserved claims raised as part of an appeal from the denial of a timely plea-withdrawal motion.[4]

## Background

¶2    On May 29, 2014, Mr. Badikyan stabbed his wife in the arm with a box cutter. He agreed to drive her to the hospital, but on the way he changed course and told her they were "both going to die that day." When Mr. Badikyan stopped at an intersection, his wife fled the car. He then chased her down, tackled her to the ground, and stabbed her again with the box cutter, this time in the side and neck. Several bystanders stopped Mr. Badikyan and held him down until the police arrived.

¶3    The State charged Mr. Badikyan with three crimes: attempted murder, evidence tampering, and aggravated assault. He initially pled not guilty to all three charges. But he later struck a deal with the State and pled guilty to attempted murder. In exchange, the State dismissed the other two charges and agreed it would not oppose Mr. Badikyan when he requested credit for time served.

¶4    At Mr. Badikyan's change-of-plea hearing, his trial counsel prepared a plea agreement that listed information about the plea and the agreed-upon facts. Mr. Badikyan is a native Armenian who "speaks very little English, and does not read English." So before he pled guilty, an interpreter translated the terms of his plea agreement and assisted him at the change-of-plea hearing. Mr. Badikyan's trial counsel stated at the hearing that the interpreter translated the plea agreement "verbatim word-for-word," and trial counsel was confident Mr. Badikyan understood the agreement.

---

[1] UTAH CODE § 77-13-6.

[2] 2017 UT 83, 416 P.3d 520.

[3] 2017 UT 84, 416 P.3d 546.

[4] This holding is identical to our holding in *State v. Flora*, 2020 UT 2, -- P.3d ---, issued concurrently with this opinion.

Mr. Badikyan also confirmed in a plea colloquy that his plea was voluntary and that he had been provided an interpreter.

¶5 After the change-of-plea hearing, but prior to sentencing, Mr. Badikyan timely moved to withdraw his plea by sending a *pro se* letter to the district court. He argued in the letter that his plea was not knowing and voluntary because he "was very stressed and under much pressure from [his] lawyer." After receiving this letter, the district court appointed conflict counsel, who then filed a formal motion to withdraw Mr. Badikyan's plea.

¶6 Upon receiving Mr. Badikyan's formal motion to withdraw, the district court held an evidentiary hearing, providing a different interpreter than the one who attended his change-of-plea hearing. There, Mr. Badikyan testified that his former interpreter mistranslated his plea agreement. He claimed he "couldn't understand everything" that was being read to him at the time of his plea and, as a result, "pleaded guilty not knowing the entire situation." He also testified that trial counsel unduly tried "convincing" him to enter the plea agreement[5] and did not fully explain the immigration consequences of his plea. Finally, Mr. Badikyan claimed that mental health issues prevented him from entering a knowing and voluntary plea.

¶7 The district court denied his motion, ruling that "there were no specific instances given or particular inaccuracies of translation" that influenced his plea. It also ruled that trial counsel did not oversell the plea bargain and clearly communicated its immigration consequences. Finally, the court ruled that Mr. Badikyan's mental health issues did not affect his ability to comprehend the change–of–plea proceedings.

¶8 Mr. Badikyan appealed this ruling, which was affirmed by the court of appeals in *State v. Badikyan*.[6] Instead of attacking the

---

[5] Although Mr. Badikyan's *pro se* letter stated he was "under much pressure from [his] lawyer" when he was asked at the evidentiary hearing whether he "felt pressured" into taking a guilty plea, Mr. Badikyan said, "[N]ot really . . . pressure but like convincing me nicely." He also testified that at one point he told his trial counsel and his first interpreter that he did not want to plead guilty, but that "they started convincing me again saying that if we were to go for a trial, we have to fight and it will be bad for you."

[6] 2018 UT App 168, ¶¶ 1, 29, 436 P.3d 256.

district court's ruling, Mr. Badikyan argued for the first time "that he did not understand the critical elements of attempted murder."[7] He "concede[d] that he did not present his critical elements theory to the district court," but argued he was entitled to present it "under the plain error exception to the preservation rule."[8]

¶9 The court of appeals ruled that, under Utah's Plea Withdrawal Statute,[9] it lacked jurisdiction to consider Mr. Badikyan's unpreserved critical-elements challenge. Invoking our recent opinions in *State v. Rettig*[10] and *State v. Allgier*,[11] the court explained that "[t]he standard set forth in the Plea Withdrawal Statute is *both* a rule of preservation and a jurisdictional bar on appellate consideration of matters not properly preserved."[12] Under this standard, the court concluded that it could not hear Mr. Badikyan's critical-elements challenge because he "failed to properly preserve his legal theory in the district court."[13]

¶10 Following this ruling, we granted Mr. Badikyan's petition for certiorari. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶11 Mr. Badikyan raises a single issue: whether the court of appeals erred in concluding it lacked jurisdiction to consider an unpreserved claim as part of an appeal from a denial of a timely motion to withdraw a guilty plea. On certiorari, we "review the decision of the court of appeals for correctness, without deference to its conclusions of law."[14]

---

[7] *Id.* ¶ 17.

[8] *Id.* ¶ 18.

[9] UTAH CODE § 77-13-6.

[10] 2017 UT 83, 416 P.3d 520.

[11] 2017 UT 84, 416 P.3d 546.

[12] *Badikyan*, 2018 UT App 168, ¶ 22 (quoting *Rettig*, 2017 UT 83, ¶ 27) (emphasis in original).

[13] *Id.*

[14] *State v. Lambdin*, 2017 UT 46, ¶ 11, 424 P.3d 117 (citation omitted).

**Analysis**

¶12 We granted certiorari to decide whether Utah Code section 77-13-6, the Plea Withdrawal Statute, allows defendants to invoke our recognized preservation exceptions when appealing a timely motion to withdraw a guilty plea. We held in *State v. Rettig* and *State v. Allgier* that the statute prohibits appellate review of all unpreserved plea challenges raised on *untimely* motions to withdraw, including those that fall within the traditional exceptions to the preservation doctrine.[15] Now Mr. Badikyan asks us to decide whether the same is true of new challenges raised on *timely* motions; that is, whether he may raise an unpreserved claim on appeal that falls within one of our preservation exceptions.

¶13 As we explained in *Rettig*, the Plea Withdrawal Statute creates a rule of preservation that is separate and distinct from our common-law preservation doctrine.[16] Under our common-law doctrine, if a party fails to present an issue to the trial court, an appellate court will address that issue only if it falls within one of three recognized exceptions: plain error, ineffective assistance of counsel, or exceptional circumstances.[17] We held in *Rettig* and *Allgier* that defendants cannot rely on these common-law preservation exceptions when appealing the denial of a plea-withdrawal motion made *after* sentencing, which violates the Plea Withdrawal Statute.[18] And we clarified that an untimely motion to withdraw forecloses appellate review of *all* post-sentencing plea challenges, including those based on our recognized preservation exceptions.[19]

¶14 Mr. Badikyan argues that his case is factually distinct from *Rettig* and *Allgier* because he timely moved to withdraw his plea before sentencing, as required by the Plea Withdrawal Statute. He

---

[15] 2017 UT 83, ¶ 44, 416 P.3d 520; 2017 UT 84, ¶ 26, 416 P.3d 546; *see also State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443 (explaining that this court recognizes "three distinct exceptions to preservation: plain error, ineffective assistance of counsel, and exceptional circumstances").

[16] 2017 UT 83, ¶ 44.

[17] *See Johnson*, 2017 UT 76, ¶ 19.

[18] 2017 UT 83, ¶ 47; 2017 UT 84, ¶ 25.

[19] *Rettig*, 2017 UT 83, ¶ 34; *Allgier*, 2017 UT 84, ¶ 26; .

claims that this factual distinction renders *Rettig* and *Allgier* inapplicable, so his case is controlled by the Plea Withdrawal Statute's plain language. And the plain language of the statute, Mr. Badikyan argues, allows him to raise an unpreserved plea challenge on appeal if that challenge falls within one of our recognized preservation exceptions.

¶15  We disagree and affirm the court of appeals' conclusion that the Plea Withdrawal Statute bars appellate review of all unpreserved claims, even those made on appeal of timely motions to withdraw. Our decisions in *Rettig* and *Allgier*, as well as the Plea Withdrawal Statute's plain language, mandate this outcome.

## I. The Preservation Rule Established in *Rettig* and *Allgier* Is Not Subject to Our Recognized Preservation Exceptions

¶16  We agree with the court of appeals that the Plea Withdrawal Statute's preservation rule, as articulated in *State v. Rettig* and *State v. Allgier*, precludes review of Mr. Badikyan's unpreserved claim.[20] These decisions indicate that the common-law preservation exceptions do not apply to the statute's unique preservation rule, even in cases where a defendant moved to withdraw his or her plea before sentencing.

¶17  This court has long held that the Plea Withdrawal Statute "cuts off a defendant's right to a direct appeal once sentencing is announced."[21] In *Gailey v. State*, for example, we declined to hear a defendant's post-sentencing attempt to challenge her plea as unknowing and involuntary because both our case law and the plain language of the Plea Withdrawal Statute impose "a procedural bar" on direct appeals once sentencing takes place.[22] We have reached similar conclusions in a line of cases spanning nearly two decades.[23]

---

[20] *See State v. Badikyan*, 2018 UT App 168, ¶ 22, 436 P.3d 256.

[21] *Gailey v. State*, 2016 UT 35, ¶ 2, 379 P.3d 1278.

[22] *Id.* ¶ 16.

[23] *See id.*  ¶¶ 14–16 ("Our cases interpreting the 2003 version of the Plea Withdrawal Statute have reaffirmed the principle that this statute imposes a procedural bar."); *State v. Ott,* 2010 UT 1, ¶ 18, 247 P.3d 344 ("[F]ailure to withdraw a guilty plea within the time frame dictated by [the Plea Withdrawal Statute] deprives the trial court and appellate courts of jurisdiction to review the validity of the plea.");
(Continued)

¶18 We built on this line of precedent in *Rettig* and *Allgier*. These two cases addressed how the Plea Withdrawal Statute affects an unpreserved issue raised for the first time on a defendant's untimely motion to withdraw. Like the defendant in *Gailey*, the *Rettig* and *Allgier* defendants both tried to withdraw their pleas after sentencing. But, unlike the defendant in *Gailey*, both also raised unpreserved ineffective-assistance-of-counsel claims. Although ineffective assistance of counsel is an exception to the preservation doctrine, we clarified that the Plea Withdrawal Statute "does not allow defendants to work around [its procedural] bar through the exceptions to preservation."[24] As we explained in *Allgier*, when defendants fail to withdraw their pleas before sentencing, they "waive[] [their] right to a direct appeal" and must pursue unpreserved challenges under the Post-Conviction Remedies Act (PCRA).[25]

¶19 We further clarified in *Rettig* that, by requiring defendants to move to withdraw their plea "before sentence is announced," the Plea Withdrawal Statute "establishes a standard of preservation" and "imposes a strict sanction of waiver that is not subject to any common-law exceptions" like plain error or ineffective assistance of counsel.[26] In other words, the statute "foreclose[s] review for plain error or ineffective assistance of counsel because [it] speaks directly

---

*Grimmett v. State*, 2007 UT 11, ¶ 25, 152 P.3d 306 ("Because Grimmett's motion to withdraw was untimely . . .[,] we have no jurisdiction to consider his challenge to the validity of his guilty pleas."); *State v. Reyes*, 2002 UT 13, ¶ 3, 40 P.3d 630 ("[B]ecause Reyes did not move to withdraw his guilty plea within thirty days after entry of the plea [as required by the 1999 Plea Withdrawal Statute], we lack jurisdiction to address the issue on appeal."); *State v. Ostler*, 2001 UT 68, ¶ 13, 31 P.3d 528 (explaining that the district court may not review a plea when a defendant does not file a motion to withdraw within the thirty-day deadline imposed by the 1999 Plea Withdrawal Statute) *superseded by statute*, 2003 Utah Laws 1321, *as recognized in Gailey*, 2016 UT 35, ¶¶ 14–15 .

[24] *State v. Allgier*, 2017 UT 84, ¶ 26, 416 P.3d 546.

[25] *Id.* ¶ 27.

[26] 2017 UT 83, ¶ 34, 416 P.3d 520 (citation omitted).

and comprehensively to the result of failure to move to withdraw prior to sentencing."[27]

¶20 Mr. Badikyan argues that *Rettig* and *Allgier* do not apply to his case because he complied with the Plea Withdrawal Statute and moved to withdraw prior to sentencing. It is true that *Rettig* and *Allgier* do not expressly hold that the Plea Withdrawal Statute's preservation rule applies to defendants who move to withdraw their guilty pleas before sentencing.[28] But the fact that Mr. Badikyan

---

[27] *Id.* ¶ 42.

[28] While we have not directly addressed this issue, two of our past cases—*State v. Dean*, 2004 UT 63, 95 P.3d 276 and *State v. Moa*, 2012 UT 28, 282 P.3d 985—implicitly broached the subject. In *Dean*, we reviewed an unpreserved plain-error claim raised on appeal of a timely motion to withdraw a guilty plea. 2004 UT 63, ¶ 6. We did not address whether the Plea Withdrawal Statute gave us jurisdiction to do so. Even so, *Dean* is distinguishable because it dealt with a previous version of the Plea Withdrawal Statute. *Id.* ¶ 11. This version required that defendants move to withdraw "within 30 days after the entry of the plea" instead of "before sentence is announced." UTAH CODE § 77-13-6(2)(a) (1999). It also did not contain the requirement in subsection (2)(c) that "any challenge" not made in a timely motion be pursued under the PCRA. *Compare* UTAH CODE § 77-13-6 (1999) *with* UTAH CODE § 77-13-6.

*Moa*, on the other hand, dealt with the current version of the Plea Withdrawal Statute. 2012 UT 28, ¶ 29 (citing UTAH CODE § 77-13-6). There, the defendant also raised an unpreserved plain-error argument when appealing the denial of his timely motion to withdraw. *Id.* ¶ 12. We granted certiorari to determine not whether the court of appeals had jurisdiction, but whether it "erred in holding that Mr. Moa had failed to demonstrate plain error in the acceptance of his plea." *Id.* ¶ 13. And we ultimately held that Mr. Moa's plain-error claim was barred under the invited-error doctrine. *Id.* ¶¶ 23–25. While this holding presupposes that plain-error review applied to Mr. Moa's unpreserved argument—a presupposition inconsistent with *Rettig* and *Allgier*—neither the parties nor this court identified issues of preservation or jurisdiction. So to the extent that *Moa* is inconsistent with *Rettig* and *Allgier*, the preservation and jurisdictional rules established in *Rettig* and *Allgier* govern.

presented several other timely plea challenges to the district court before sentencing does not preserve the critical-elements challenge he now brings for the first time on appeal.[29] We do not generally conceive of preservation in terms of one issue preserving a separate issue. Rather, preservation typically occurs on an issue-by-issue or claim-by-claim basis.[30] So we take this opportunity to clarify that the Plea Withdrawal Statute's preservation rule applies to *all* plea challenges made after sentencing, even where a defendant has made an otherwise timely plea-withdrawal request.

¶21 In *Rettig*, we explained that the Plea Withdrawal Statute establishes its own preservation rule that is distinct from the common-law rule, and to which the common-law preservation exceptions do not apply.[31] And in *Allgier*, we clarified that the

---

[29] Mr. Badikyan argued to the district court that his plea was not knowing and voluntary because his interpreter mistranslated his plea agreement, his trial counsel pressured him into taking a plea, and his trial counsel failed to explain the immigration consequences of pleading guilty. Consequently, on appeal, Mr. Badikyan may raise only new or controlling legal authority "that directly bears upon" these "properly preserved issue[s]." *Patterson v. Patterson*, 2011 UT 68, ¶ 18, 266 P.3d 828.

[30] *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an *issue* in the trial court, it has failed to preserve the *issue*, and an appellate court will not typically reach that issue absent a valid exception to preservation.") (emphasis added) (citation omitted); *Id.* ¶ 14 n.2 (explaining that while "we view *issues* narrowly," "new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation" so long as they are limited to "new authority or cases supporting an issue that was properly preserved") (emphases in original) (citation omitted); *O'Dea v. Olea*, 2009 UT 46, ¶ 18, 217 P.3d 704 ("To properly preserve an issue at the district court, the following must take place: '(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority.'") (quoting *Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998)).

[31] 2017 UT 83, ¶ 34 (clarifying that the Plea Withdrawal Statute "establishes a standard of preservation . . . *and* it imposes a strict sanction of waiver that is not subject to any common-law exceptions . . . .") (emphasis in original).

statute's preservation rule, much like the common-law rule, requires a defendant to present an issue to the district court in such a way that the court "has an opportunity to rule on that issue."[32] We also explained that when an appellate court reviews a defendant's plea-withdrawal motion, it must "look to whether an issue was specifically raised in the district court in a timely fashion and whether evidence or relevant legal authority was introduced to address the issue."[33]

¶22 To comply with the Plea Withdrawal Statute's preservation rule, Mr. Badikyan was required to have presented his critical-elements challenge to the district court in order to give the court an opportunity to rule on it prior to appeal. His failure to do so means his critical-elements challenge is unpreserved. Under the common-law preservation rule, Mr. Badikyan could still raise this challenge under the plain-error exception. But as we explained in *Rettig* and *Allgier*, this exception does not apply to the Plea Withdrawal Statute's separate and distinct preservation rule.

¶23 So even though Mr. Badikyan's case is somewhat distinct from *Rettig* and *Allgier*, our discussion of the Plea Withdrawal Statute in those cases strongly suggests that Mr. Badikyan's failure to present his critical-elements challenge to the district court forecloses this challenge on appeal. The statute's plain language confirms this conclusion.

## II. The Plea Withdrawal Statute's Plain Language Bars Mr. Badikyan's Unpreserved Argument

¶24 The Plea Withdrawal Statute's plain language reinforces our conclusion that an appellate court may not consider Mr. Badikyan's unpreserved claim. The statute imposes two requirements on defendants seeking to withdraw a guilty plea. First, subsection (2)(a) requires a defendant to make a "showing that [his or her guilty plea] was not knowingly and voluntarily made."[34] Second, subsection (2)(b) requires that defendants make a "request to withdraw" their plea "by motion before sentence is announced."[35] Subsection (2)(c) of

---

[32] *Allgier*, 2017 UT 84, ¶ 25 (citation and internal quotation marks omitted).

[33] *Id.*

[34] UTAH CODE § 77-13-6(2)(a).

[35] *Id.* § 77-13-6(2)(b).

the statute expressly states that "[a]ny challenge to a guilty plea" that does not meet these two requirements must be pursued under the PCRA.[36]

¶25 Mr. Badikyan argues that the phrase "challenge to a guilty plea" in subsection (2)(c) refers to a defendant's plea-withdrawal motion, and not to the individual claims made therein. In his view, so long as a defendant moves to withdraw his or her plea before sentencing, in compliance with subsection (2)(b), appellate courts may consider unpreserved plea challenges based on the common-law preservation exceptions. According to Mr. Badikyan, such unpreserved challenges are just one of the many different ways a defendant can make a "showing that [his or her plea] was not knowingly and voluntarily made," as required by subsection (2)(a).

¶26 The State, in contrast, argues that the phrase "any challenge" must refer to the specific legal ground upon which a defendant attacks his or her plea. Under this reading, Mr. Badikyan's plain-error claim is a challenge to a guilty plea made after sentencing because he raised it for the first time on appeal. And since he raised it after sentencing, the State argues, this challenge is barred under subsection (2)(c). We agree with the State.

¶27 When interpreting a statute, our "primary goal" is ascertaining the legislature's intent "in light of the purpose that the statute was meant to achieve."[37] The "best evidence" of legislative intent is "the plain language of the statute itself."[38] When reading a statute's plain language we "assume, absent a contrary indication, that the legislature used each term advisedly according to its ordinary and usually accepted meaning."[39] We also "presume[] that the expression of one [term] should be interpreted as the exclusion of another."[40] And "[w]herever possible, we give effect to every word

---

[36] *Id.* § 77-13-6(2)(c).

[37] *In re Gestational Agreement*, 2019 UT 40, ¶ 19, 449 P.3d 69 (citation and internal quotation marks omitted).

[38] *Id.* (citations and internal quotation marks omitted).

[39] *Id.* (citation and internal quotation marks omitted).

[40] *Id.* (first and second alterations in original) (citation and internal quotation marks omitted).

of a statute, avoiding [a]ny interpretation which renders parts or words . . . inoperative or superfluous."[41]

¶28 Here, the legislature's use of the phrase "request to withdraw" in subsection (2)(b) and the phrase "[a]ny challenge" in subsection (2)(c) signals an intent to bar all unpreserved arguments raised on appeal of plea-withdrawal motions. Assuming the phrase "any challenge" was used advisedly and to the exclusion of "request to withdraw," we conclude that "request to withdraw" refers to a defendant's plea-withdrawal motion and that "any challenge" refers to the specific legal grounds raised within the motion. Under this interpretation, any specific ground a defendant has for challenging his or her plea that was not presented to the district court in a pre-sentence motion to withdraw must be pursued under the PCRA.

¶29 This interpretation allows us to give effect to the Plea Withdrawal Statute's every word. If the legislature wanted "any challenge" to be the equivalent of "request to withdraw," it would have repeated the term "request to withdraw" in subsection (2)(c) or simply said "any such request." In other words, when subsections (2)(b) and (2)(c) are read together, it is clear that "any challenge" must carry a different meaning from the phrase "request to withdraw." And we read the phrase "any challenge" as a reference to specific legal claims, like Mr. Badikyan's, which are raised for the first time on appeal.

¶30 Our past interpretations of the term "any" support a broad reading of "any challenge." We have previously explained that "[t]he term *any* is broadening and inclusive.[42] "It is defined as 'every; all' . . . or 'one or more without specification or identification.'"[43] This expansive reading "is the sense of the word given in extensive judicial constructions of a broad range of statutory provisions, which consistently recognize the [term's] broad, encompassing import."[44]

---

[41] *State v. Stewart*, 2018 UT 24, ¶ 12, 438 P.3d 515 (citation and internal quotation marks omitted).

[42] *Graves v. North Eastern Servs., Inc.,* 2015 UT 28, ¶ 52, 345 P.3d 619 (emphasis in original).

[43] *Id.* (citations omitted).

[44] *Id.* For example, the United States Supreme Court recently explained that "Congress' use of the word 'any' suggests an intent to use that term 'expansive[ly].'" *Smith v. Berryhill*, 139 S. Ct. 1765, 1774

(Continued)

¶31 In *State v. Outzen*, for instance, we relied on this expansive reading of "any" to hold that a statute criminalizing driving with "*any* measurable controlled substance . . . in [a] person's body" encompassed more than just "those [substances] that cause impairment."[45] A more narrow interpretation, we explained, "would reduce the scope of the statute to less than '*any*'—a result that [would have been] incompatible with the legislature's use of the word *any*."[46] We read the statute this way even though Mr. Outzen "was not too impaired to drive."[47]

¶32 As in *Outzen*, if we construed the phrase "any challenge" in subsection (2)(c) as applying only to challenges made in untimely motions to withdraw, we would reduce the scope of the Plea Withdrawal Statute to less than "any." And while this construction would let appellate courts consider challenges that, like Mr. Badikyan's, arise from timely motions to withdraw, it is incompatible with the legislature's use of the word "any." So we instead read "any challenge" to include all challenges a defendant makes after sentencing. And this includes claims of plain error, exceptional circumstances, and ineffective assistance of counsel raised on appeal of an otherwise timely plea-withdrawal motion.

¶33 This broad reading of "any challenge" forecloses appellate review of Mr. Badikyan's critical-elements challenge. Subsection (2)(b) of the Plea Withdrawal Statute required Mr. Badikyan to present this challenge to the district court before he was sentenced. Because he did not do so, he must, under the plain language of subsection (2)(c), pursue it under the PCRA. So the court of appeals correctly held that it could not consider Mr. Badikyan's unpreserved claim. The plain language of the Plea Withdrawal Statute prohibits appellate courts from hearing any claim raised for the first time on appeal of the denial of a plea-withdrawal request—even if the defendant made the request before sentencing.[48] Mr. Badikyan's

---

(2019) (alteration in original) (internal quotation marks omitted); *see also Graves*, 2015 UT 28, ¶ 52 n.4 (collecting additional United States Supreme Court cases with broad readings of the term "any").

[45] 2017 UT 30, ¶ 11, 408 P.3d 334 (emphasis in original).

[46] *Id.* (emphases in original).

[47] *Id.* ¶ 1.

[48] Because we find that the Plea Withdrawal Statute is not ambiguous, we need not reach Mr. Badikyan's claim that the rule of

(Continued)

unpreserved claim is thus barred by the Plea Withdrawal Statute's plain language.

**Conclusion**

¶34 We affirm the court of appeals, and hold that the Plea Withdrawal Statute bars appellate review of unpreserved claims raised as part of an appeal of a timely motion to withdraw a guilty plea. This result is mandated by both the Plea Withdrawal Statute's plain language and its rule of preservation. Subsection (2)(c) of the statute unequivocally requires that "any challenge" not presented to the district court in a timely plea-withdrawal motion—including an unpreserved challenge that otherwise qualifies for a common-law preservation exception—must be pursued under the PCRA. And as we explained in *Rettig* and *Allgier*, the Plea Withdrawal Statute creates its own preservation rule that is not subject to the common-law preservation exceptions. This rule, as a creature of statute, applies regardless of whether a defendant has already raised other claims in a timely plea-withdrawal motion.

---

lenity requires us to adopt his preferred reading. "The rule of lenity requires that we interpret an ambiguous statute in favor of lenity toward the person charged with criminal wrongdoing." *State v. Rasabout*, 2015 UT 72, ¶ 22, 356 P.3d 1258. But, as the State points out, even if we found the Plea Withdrawal Statute ambiguous, the rule of lenity applies only to the construction of ambiguous *penal* laws. *Id.* ¶ 22 n.43. The Plea Withdrawal Statute is not a penal law because it does not "impose[] a disability for the purposes of punishment" or "reprimand" a wrongdoer, but instead exists to "accomplish some other legitimate governmental purpose." *Trop v. Dulles*, 356 U.S. 86, 96 (1958); *see also Sinclair Oil Corp. v. Atl. Richfield Co.*, 720 F. Supp. 894, 899 (D. Utah 1989) (explaining that penal laws "are those imposing punishment for an offense committed against the state" that "the executive of the state has the power to pardon.") (quoting *Huntington v. Attrill*, 146 U.S. 657, 667 (1892)).